## VANGUARD INSURANCE COMPANY, Appellant,

### v.

## PLAINS HELICOPTER, INC., dba Slaton Flying Service, Appellee.

### No. 8602.

Court of Civil Appeals of Texas, Amarillo.

Oct. 20, 1975.

Rehearing Denied Nov. 17, 1975.

Key, Carr, Evans & Fouts (Donald M. Hunt), Lubbock, for appellant.

Nelson, McCleskey, Harriger & Brazill (Ernest R. Finney, Jr.), Lubbock, for appellee.

REYNOLDS, Justice.

The sole question presented in this declaratory judgment action is whether a helicopter, insured except "while . . . used for crop dusting or spraying operations," was covered when, after the actual spraying had been finished and the helicopter had landed, it crashed after take-off as a landing was attempted on the back of the nurse truck, used as an integral part of the spraying operations, to refuel for the return flight. The trial court determined and declared, and correctly so in our view, that the helicopter was not being used for crop dusting or spraying operations at the time of the crash and that excluded coverage did not apply. Affirmed.

Vanguard Insurance Company instituted this declaratory judgment action for the

determination whether its aircraft hull and liability policy issued to Plains Helicopter, Inc., d/b/a Slaton Flying Service, provided coverage for a Plains' helicopter at the time it crashed. The parties stipulated certain facts which were adopted by the court as its findings of facts.

Based on an application from an independent agent, Vanguard issued its aircraft hull and liability policy insuring Plains' aircraft, among which were helicopters used for crop dusting and spraying and the training of pilots. Although Plains did not intend to secure, and the agent did not intend to provide, any coverage while the aircraft were being used for crop dusting and spraying operations, through accident or mistake an endorsement excluding this coverage was not made a part of the policy.

On the morning of the day the helicopter crashed, Robert Earl Evans, a professional pilot for Plains, flew the helicopter from its home base at Slaton to the A. C. Light landing strip near Olton where Light operated a business known as Olton Spraying Service. By a contractual arrangement, Light paid Plains to dust or spray crops of farmers with whom Light had contracted for spraying services. Light had arranged for Plains to spray a field of potatoes near Hart, and Evans flew the helicopter to the field. At the field was a Plains nurse truck, equipped with a landing platform on which the helicopter could be loaded with fuel and chemicals, which, although used in the training of pilots, was an integral part of the spraying operations.

Evans sprayed a part of the field of potatoes in the morning, but when wind conditions prevented further spraying, Evans landed the helicopter in the field near the nurse truck to wait for the wind to abate. Later in the afternoon, the wind abated and Evans sprayed the remainder of the field. Evans landed near the nurse truck to see if there were any further instructions from Gene Light, the son of A. C. Light, who was serving as a flagman. At that time, Gene Light left the field without giving Evans any instructions, but he requested that Ev-

ans wait until he returned. Light had no more crops in the area to be sprayed, but Evans did not know this.

Gene Light had not returned when Evans realized it was getting too late in the day to spray. Evans decided to refuel the helicopter and return to the Light landing strip because the helicopter could not be left in the field overnight. Evans took off from the ground and, as he attempted to land on the nurse truck to refuel for the return flight, the helicopter malfunctioned and crashed. Florencio Sauceda, the operator of the nurse truck who was standing on the ground nearby, sustained fatal injuries as the result of the crash.

Sauceda's heirs filed a wrongful death action against Evans and Plains. Plains requested Vanguard to defend the action under the liability portion of the policy and to pay the damages sustained to the helicopter under the hull portion of the policy. At this time it was first discovered that the policy did not contain any exclusion of coverage while Plains' aircraft were being used for crop dusting or spraying operations.

Following negotiations between Vanguard and Plains, Vanguard accepted the defense of the wrongful death action pursuant to a non-waiver agreement, and the parties agreed to attach Endorsement 13 to the policy. The endorsement, made effective as of the date of the policy, reads:

> Fixed Wing or Rotor Aircraft owned by the Named Insured certificated as Restricted and equipped for crop dusting and spraying uses shall be afforded insurance under this policy for uses by the Named Insured of "Limited Commercial" as defined in VII(C) of the Definitions. This extension of insurance shall not apply while the aircraft are used for crop dusting or spraying operations.

At the time the agreements were made, Vanguard and Plains were aware of all the facts and circumstances that were known to them at the date of the trial, and both were aware that Vanguard planned to file this declaratory judgment action.

Simplified, the question is: were the spraying operations completed when the helicopter crashed? Vanguard contends that an integral part of the excluded operations was continuing at the time of the crash and, therefore, there was no coverage; Plains responds that the excluded activity had been completed before the crash occurred and the helicopter was then insured. Because of the factual situation, we think it unnecessary to discuss at length the positions of the parties regarding the intention to exclude extra-hazardous activity and how far the area of activity should be extended or limited.

 The rights of the parties are grounded in contract. The exclusion applies only "while the aircraft are used for crop dusting or spraying operations." The policy does not define the word "operations" nor otherwise prescribe a test for determining when operations begin or end. In this situation, the terms used in an insurance contract are to be given their plain, ordinary and generally accepted meaning. *General American Indemnity Company v. Pepper*, 161 Tex. 263, 339 S.W.2d 660 (1960). The word "operation" was given its generally accepted meaning of "A doing or performing action; work; a deed," in *Pan American Insurance Company v. Cooper Butane Company*, 157 Tex. 102, 300 S.W.2d 651 (1957), and there the Supreme Court held that the word "operations" was used in an insurance contract as a synonym of the word "work." It has been said that when parties to an insurance contract use language which has been held by the courts to have a certain meaning, they intend to give that meaning to the language. *Davis v. National Security Life & Cas. Ins. Co.*, 255 S.W.2d 576 (Tex.Civ.App.—El Paso 1953), *rev'd on other grounds*, 152 Tex. 316, 257 S.W.2d 943 (1953).

So here, the parties, in excluding coverage while the helicopter was used for crop dusting or spraying operations without qualifying the usual meaning of the word "operations," are held to have intended to use the word "operations" as a synonym of the word "work." Thus, the operations excluded by the insurance contract were completed when the work necessary to dust or spray the particular crop was done. The potato crop spraying had been completed, and nothing else remained or was required to be done, when the helicopter crashed. It follows that at the time of the crash, the helicopter was not being used for crop dusting or spraying operations. The fact that the crash occurred when Evans, some time after the work of spraying the potatoes had been finished, was preparing to land on the nurse truck, which had been used as an integral part of the spraying operations, does not justify a holding that the crop spraying had not been completed at that time.

The judgment of the trial court is affirmed.