MILDRED ESPINAL & another[1] *vs.* LIBERTY MUTUAL
INSURANCE COMPANY & another.[2]

No. 97-P-2029.

Essex. February 3, 1999. - August 18, 1999.

Present: JACOBS, SMITH, & PORADA, JJ.

*Insurance,* Motor vehicle insurance, Defense of proceedings against insured, Fraud and concealment.

The provisions of G. L. c. 175, § 113A(5), did not operate to bar an insurer from raising fraud as a defense in an action to reach and apply the proceeds of an insured's compulsory insurance policy, in circumstances in which the insurer asserted that in fact no accident had occurred and that there was, therefore, no insurance coverage. [597-598]

An insurer is not obligated to defend an insured in circumstances in which it has concluded that the insured and a party claiming to have been injured have conspired to submit a fraudulent claim: the proper procedure for the insurer to ascertain its duties and obligations is to file a declaratory action at the time it disclaims coverage, serving all interested parties. [598-599]

Where purportedly injured plaintiffs established by a default judgment that an accident occurred and an insured driver was liable, and the insurer established by a declaratory judgment that no accident had occurred and that, therefore, there was no insurance coverage for the claims presented by the plaintiffs, there was a genuine issue of material fact whether the plaintiffs had perpetrated a fraud, a defense properly raised by the insurer in the plaintiffs' action to reach and apply insurance proceeds, and therefore summary judgment should not have entered for the plaintiffs. [599]

CIVIL ACTION commenced in the Superior Court Department on January 23, 1996.

Motions for summary judgment and for reconsideration were heard by *Charles M. Grabau,* J., and additional motions for reconsideration, to clarify inconsistent judgments, and for separate and final judgment were heard by *Allan van Gestel,* J.

---

[1] Maria Ovalle.

[2] Antony Rivas.

*Theodore F. Riordan* for Liberty Mutual Insurance Company.
*Paul F. Applebaum* for the plaintiffs.

SMITH, J. The defendant, Liberty Mutual Insurance Company (Liberty), insured its codefendant, Antony Rivas, who allegedly was involved in an automobile accident with the plaintiffs, Mildred Espinal and Maria Ovalle. Liberty appeals from the allowance of a motion for summary judgment entered in the Superior Court in favor of the plaintiffs. We reverse and remand for further proceedings in the Superior Court.

The plaintiffs claimed that on March 30, 1995, they were injured in an accident when the automobile in which they were traveling was struck by a vehicle operated by the defendant Rivas.[3] The plaintiffs filed claims with Liberty for their alleged injuries.

On August 16, 1995, Liberty informed the plaintiffs' attorney that it had conducted an investigation and subsequently concluded that no accident had taken place; therefore, Liberty would not make any payment in the matter.

*The District Court action — the underlying tort claim.* On August 25, 1995, the plaintiffs filed an action in the District Court against Rivas, claiming that they were injured in the accident as a result of his negligence. Liberty was not made a party to that action, but the plaintiffs notified it of their intent to seek a default judgment. Liberty, in turn, notified Rivas that as a result of its investigation, it would not defend him in the District Court action. Rivas was defaulted and, on December 6, 1995, the plaintiff Espinal recovered a default judgment in the amount of $8,682.80 plus costs; the plaintiff Ovalle recovered a default judgment of $6,615.46 plus costs.

*The Superior Court actions.* On January 23, 1996, the plaintiffs brought an action in the Superior Court against Rivas and Liberty, seeking to reach and apply the proceeds of Rivas's insurance policy. In its answer to the plaintiffs' complaint, Liberty claimed that no accident had occurred and, therefore, there was no insurance coverage under Rivas's compulsory insurance policy for the plaintiffs' claims. Liberty also filed a

---

[3]The first motion judge stated that the plaintiffs were passengers in Rivas's automobile. The second motion judge stated that Rivas's automobile struck one operated by Espinal. The complaint appears to suggest that the plaintiffs were passengers in the Rivas automobile. In any event, whether the plaintiffs were in one automobile, while Rivas was in another, or were passengers in Rivas's automobile, does not affect our result.

counterclaim against the plaintiffs seeking a declaration that there was no insurance coverage because there was no accident. It also brought a cross-claim against Rivas seeking a declaration stating that because an accident had not occurred, there was no coverage and, therefore, it was relieved of any obligation to defend or indemnify Rivas in the Superior Court action.[4]

The plaintiffs filed a motion for summary judgment against Liberty. Because the default judgment against Rivas in the District Court had established liability and damages, the plaintiffs claimed that Liberty was precluded from raising any defenses in the reach and apply action. In response, Liberty asserted that it had denied the plaintiffs' claims on the ground of fraud; that is, no accident had occurred as claimed by the plaintiffs. After a hearing, a Superior Court judge (first motion judge) ruled that a genuine issue of material fact existed as to whether an accident had occurred, and he, accordingly, denied the motion. The plaintiffs filed a motion for reconsideration, arguing that because Liberty had not appeared and defended Rivas in the underlying tort action, it had waived any defense to the plaintiffs' reach and apply action.

Before the first motion judge decided the plaintiffs' motion for reconsideration, Liberty requested a default judgment on its cross-claim against Rivas, Mass.R.Civ.P. 55(b)(2), 365 Mass. 822 (1974), in which it sought a declaratory judgment. A different Superior Court judge entered judgment against Rivas. The judgment declared that (1) no accident had occurred as previously claimed by Rivas; (2) Rivas had not cooperated with Liberty; (3) Liberty was not obligated to defend or indemnify the claims presented by the plaintiffs; and (4) there was no insurance coverage for Rivas on the claims presented by the plaintiffs.

In January, 1997, the first motion judge allowed the plaintiffs' motion for reconsideration and their summary judgment motion. The judge ruled that because Rivas had a compulsory insurance policy, Liberty could not raise the defense of lack of insurance coverage on the ground that no accident had occurred. G. L. c. 175, § 113A(5). Therefore, because Liberty failed to appear and defend Rivas in the District Court, the judge concluded that Liberty could not argue as a defense in the reach and apply ac-

---

[4]Rivas did not respond to the plaintiffs' complaint or to Liberty's cross-claim.

tion that an accident had not occurred as claimed by the plaintiffs.

In response, Liberty filed two motions. The first requested the first motion judge to reconsider his allowance of the plaintiffs' motions for reconsideration and for summary judgment. The second motion sought clarification of the apparently inconsistent judgments entered in the matter: Liberty's default judgment on its own cross-claim against Rivas (which declared that no accident had occurred between the plaintiffs and Rivas) and the allowance of the plaintiffs' summary judgment motion against Liberty.

The first motion judge recused himself and another Superior Court judge (second motion judge) denied the motions. The second motion judge ruled in line with the first motion judge, reasoning that Liberty had the obligation to raise in the underlying action in the District Court the defense that the plaintiffs' claims were outside the scope of coverage because no accident had occurred, and, in failing to do so, it could not challenge the validity of the District Court judgments in the subsequent reach and apply action. He cited *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 323-324 (1983), in support of his decision.

In *Sterilite*, this court ruled, among other things, that "an insurer [cannot] escape its duty to defend the insured against a liability arising on the face of the complaint and policy, by dint of its own assertion that there is no coverage in fact: the insurer then stands in breach of its duty even if the third party fails in the end to support any such claim of liability by adequate proof." *Id.* at 324. Because of his ruling, the second motion judge did not discuss the first motion judge's ruling that Liberty could not raise fraud as a defense at all because a compulsory automobile insurance policy was involved.

In regard to Liberty's motion to clarify the inconsistent judgments, the second motion judge ruled that there was "no true inconsistency" between the decisions; the default judgment obtained by Liberty against Rivas merely relieved Liberty of its obligations to Rivas, but not to the plaintiffs in their reach and apply action.

On appeal, Liberty argues that the allowance of the plaintiffs' motion for summary judgment was error, claiming that (1) Liberty may dispute whether an "accident" occurred even under the compulsory portion of an automobile policy; (2) it may

properly raise fraud as a defense in a reach and apply action despite not having raised the issue in the underlying tort action; and (3) summary judgment was improperly granted because Liberty had already established by way of a declaratory judgment that no accident had occurred and, therefore, there was no insurance coverage for the claims presented by the plaintiffs.

1. *Fraud as a defense in this matter.* Liberty claims that the first motion judge committed error when he ruled that because Rivas had a compulsory insurance policy, G. L. c. 175, § 113A(5), prevented Liberty from raising the defense of fraud on the part of the insured.

"The purpose of the compulsory motor vehicle insurance law is not, like ordinary insurance, to protect the owner or operator alone from loss, but rather is to provide compensation to persons injured through the operation of the automobile insured by the owner." *Wheeler* v. *O'Connell*, 297 Mass. 549, 553 (1937).

To effectuate the purpose of protecting innocent travelers, G. L. c. 175, § 113A(5), provides, in relevant part:

> "[N]o statement made by the insured or on his behalf, . . . in securing the policy . . . , no violation of the terms of the policy and no act or default of the insured, either prior to or subsequent to the issue of the policy, shall operate to defeat or avoid the policy so as to bar recovery . . . ."[5]

Thus, pursuant to G. L. c. 175, § 113A(5), neither fraud in securing a compulsory insurance policy, nor a breach of that policy by àn insured, can be claimed as a defense by the insurer to bar recovery by a judgment creditor under a reach and apply action. See *Cassidy* v. *Liberty Mut. Ins. Co.*, 338 Mass. 139, 142-143 (1958). Therefore, once it is established that an accident has occurred, an insurer is prohibited from denying coverage under a compulsory insurance policy because of the insured's violation of that policy.

---

[5]Pursuant to G. L. c. 175, § 113A(5), the insurance policy contained the following language:

> "The law provides a special protection for anyone entitled to damages under [mandatory bodily insurance coverage]. We must pay their claims even if false statements were made when applying for this policy . . . . We must also pay even if you or the legally responsible person fails to cooperate with us after the accident."

Here, the insurer claims that no accident occurred. In these circumstances, we hold that an insurer may raise fraud as a defense, even where a compulsory insurance policy is involved. While compulsory insurance is designed to protect innocent travelers, those travelers are not innocent if they file fraudulent claims. Moreover, if we held the law to be otherwise, it would open the floodgates to fictitious claims based on phantom accidents, requiring payments to those persons involved in a fraud. Clearly, that was not the Legislature's intent when it enacted G. L. c. 175, § 113A(5).

2. *At what stage may the insurer raise the defense of fraud?* The second motion judge's reliance on *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. at 323-324, in support of his ruling that Liberty was not entitled to raise the defense of fraud at the reach and apply stage was misplaced. That decision was concerned with an insurer's interpretation of its insurance policy and whether a loss was covered by the policy. Here, we are examining questions concerning whether the accident occurred at all and whether the parties had engaged in a conspiracy to defraud the insurer.

"[I]t has always been the law of this Commonwealth that a surety or indemnitor could avoid a judgment rendered against the principal or indemnitee, by showing that it was procured by collusion or fraud." *Airway Underwriters* v. *Perry*, 362 Mass. 164, 168 (1972), quoting from *Fistel* v. *Car & Gen. Ins. Corp., Ltd.*, 304 Mass. 458, 460 (1939). Our decision in *Sterilite Corp.* v. *Continental Cas. Co.*, *supra*, did not change the law on this point. As *Fistel* v. *Car & Gen. Ins. Corp., Ltd.*, 304 Mass. at 460, points out, "[i]t would be a reproach to the law if a court of equity could not prevent the enforcement of a judgment against a third person when it has been shown that such judgment was procured by fraud or collusion for the purpose of defrauding such third person."

When Liberty disclaimed liability, it had the option to defend Rivas under a reservation of rights, but it was not obligated to do so. In this case, it would have been very difficult procedurally for Liberty to assert its claim of fraud against all of the parties, including its insured, in the District Court action. An insurer should not be obligated to defend an insured when it has

concluded that the insured and the plaintiff have conspired to set forth a fraudulent claim.[6]

We suggest in the future that when similar circumstances occur, the insurer should file a declaratory action in the Superior Court and include the plaintiff as well as the insured. That action should be filed at the time the insurer makes a decision to disclaim. Thus, everyone, including the court in which the underlying tort action is filed, will be on notice of the intended actions of the insurer. This is particularly important in cases involving a compulsory insurance policy because under such a policy, there are only a very few instances in which an insurer may disclaim.

3. *Conclusion.* We conclude that summary judgment was improperly granted in this case because issues of material fact are in dispute. The plaintiffs had established, by way of default judgment, that an accident had occurred and that Rivas was liable. Liberty had established, by way of declaratory judgment, that no accident had occurred and, therefore, there was no insurance coverage for the claims presented by the plaintiffs.

Because we have concluded that Liberty could raise fraud as a defense in the reach and apply action, and because there is a genuine issue of material fact as to whether the plaintiffs have perpetrated a fraud, summary judgment was improperly granted.

*Judgment reversed.*

---

[6]The second motion judge rejected Liberty's claim that it could not ethically provide outside counsel to defend Rivas without at the same time revealing to that attorney that Rivas was a participant in a fraud. Citing *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 684 (1964), the judge stated that Liberty ought to know that there are ways of addressing those kinds of conflicts. However, fraud was not alleged in *Magoun*.