LIBERTY MUTUAL INSURANCE COMPANY *vs.*
CLAIRE AGRIPPINO, administratrix, & others.[1]

Suffolk. March 7, 1978. — April 25, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Insurance,* Motor vehicle liability insurance. *Words,* "Use."

Where a person insured against liability for bodily injury and death under both a motor vehicle policy and a "homeowner's" policy was helping to guide a boat trailer being pulled by the owner of the boat with his automobile when a shackle attaching a line between the trailer and the automobile broke and fatally injured a third person, there was no causal relationship between the insured's "use" of the trailer and the resulting injury, and the insurer under the motor vehicle policy, therefore, had no obligation respecting such injury. [112-115]

BILL IN EQUITY filed in the Superior Court on March 14, 1972.

Motions for summary judgment were heard by *Linscott,* J.

The Supreme Judicial Court granted a request for direct appellate review.

---

[1] William Green, Howard A. Goldenfarb, Middlesex Mutual Insurance Company, and National Fire Insurance Company.

*Philander S. Ratzkoff* for National Fire Insurance Company.

*Steven J. Cohen (Peter L. Puciloski* with him) for Liberty Mutual Insurance Company.

HENNESSEY, C.J. This case raises the question as to which of two liability insurance policies issued to an insured person indemnified him as to a particular legal claim which had been brought against him for personal injuries and wrongful death. The issue was raised by a petition for declaratory relief, as to which both insurance companies were parties. Both insurers brought motions for summary judgment. A judge of the Superior Court allowed the motion of the motor vehicle liability insurer and denied the motion of the general liability insurer. There was no error.

Liberty Mutual Insurance Company (Liberty) issued to William Green, the named insured, a Massachusetts combination motor vehicle policy that was in effect on the date of the occurrence here in issue and provided, in addition to statutory coverage, indemnity against liability for bodily injury and death in the amount of $100,000 for each person. National Fire Insurance Company (National) issued to Green a "homeowners" policy which was in force and in effect on the date of the occurrence and provided indemnity against "general" liability for bodily injury and death in the amount of $50,000 for each person.

The material facts of the occurrence, which are all contained in a stipulation, consist of the following. On July 4, 1969, one Howard A. Goldenfarb asked Green to assist him in attempting to pull his boat and boat trailer across a part of Nantasket Beach in Hull, Massachusetts, by hauling it with his car. Green assisted Goldenfarb in this operation by (1) lending him equipment consisting of a nylon rope, two shackles and a pulley, (2) hitching the pulley to a telephone pole, and (3) remaining at the trailer with one Dr. Spiro in order to guide it in the proper direction at the time it was to be towed. Goldenfarb attached one shackle to the rear bumper of his car and the other shackle to the trailer on the beach on which his boat was situated, thereby attaching the

line to both the car and the trailer. Goldenfarb started the car and began to go forward. At that time Dr. Spiro and Green held onto the tongue of the trailer in order to guide it in the proper direction. When Goldenfarb started to move his car the line tightened and, a few seconds later, slackened. The shackle attached to the rear bumper broke and a fragment struck and fatally injured one Paul Agrippino, a lifeguard. At no time did Green drive the car.

Goldenfarb's boat and trailer were registered to him. The trailer was designed for use with a private passenger motor vehicle and was not being used during the course of the episode for business purposes with another type of motor vehicle.

In actions brought by Agrippino's administratrix against Green and Goldenfarb, Green was represented by counsel selected by National. Liberty entered an appearance for Green through counsel, who were present but did not participate in the defense of the cases at trial. National settled the conscious suffering claim for $20,000 and the wrongful death claim for $25,000. The Middlesex Mutual Insurance Company, which had issued a standard automobile policy to Goldenfarb, contributed an additional $10,000 toward the settlement.

Liberty filed the original petition for declaratory relief in this action. It sought, inter alia, a determination that the motor vehicle policy which it had issued to Green did not provide coverage for the injury to and later death of Agrippino. Liberty also sought a determination of the extent of coverage which National extended to Green pursuant to the "homeowners" policy which National had issued to him.

Liberty's petition annexed a copy of the declaration in an action brought by the administratrix of Agrippino's estate against Green. That declaration, and a later amendment to it, alleged, in substance, that Agrippino's injury and death resulted from the negligence of Green in furnishing such inadequate equipment to Goldenfarb that part of the equipment broke while in use to tow a boat on a trailer, and that a broken portion of the equipment struck Agrippino. Na-

tional's answer did not deny that its policy covered Green, but asserted that the Liberty policy also covered the accident.

During the course of the trial of the action brought by Agrippino's estate against Green, the matter was settled. Liberty amended its petition to note the settlement and to state that National had paid, in behalf of Green, $20,000 to settle the conscious suffering claim and $25,000 to settle the wrongful death claim.

Thereafter, Liberty's motion to discontinue its own petition was allowed and the petition was dismissed without prejudice. National was then permitted to file a corrected substitute answer and counterclaim. In its substitute answer and counterclaim, National stated that National and Liberty were coinsurers as to Green and that each should, therefore, contribute 50% of the $45,000 settlement which National had paid to Agrippino's estate. Liberty answered National's substitute counterclaim and once more stated that its automobile policy did not cover the loss.

Finally, National filed an amended answer and counterclaim. In this pleading, National claimed that Liberty's policy provided primary coverage, and that National's policy provided excess coverage, or that, alternatively, both companies were coinsurers. Liberty, as before, answered that its policy was not applicable.

Following the voluntary dismissal of the original petition for declaratory relief brought by Liberty, National continued to press its counterclaim seeking declaratory relief and a judgment that Liberty owed it either all or a coinsurer's share of the amount which National paid to settle the claim of the estate against its insured, Green. National moved for partial summary judgment with respect to its assertions relating to the applicability of Liberty's policy and its relationship, if any, to National's policy.

Liberty, in response to the counterclaim of National, also sought summary judgment, and a determination that its policy did not require it to make any payment to National regarding this accident.

A Superior Court judge allowed Liberty's motion for summary judgment and denied National's motion for partial summary judgment. A claim of appeal was timely filed and this court allowed National's application for direct appellate review.

We conclude that the judge was correct. Liberty makes two contentions: (1) that its policy extends no coverage to Green as to the injury and death of Agrippino, and (2) that, if its policy does provide coverage, it is only secondary to National's policy. We agree with the first contention, and thus need not consider the second contention.

We reach our conclusion by examining the facts of the occurrence which resulted in the injury and death of Agrippino, as viewed in light of the relevant provisions of Liberty's policy. Essentially, we reason that the only terms of that policy which even arguably extend coverage here are the nonstatutory, "other motor vehicle" provisions; that these provisions require that the potential legal liability of the insured (Green) must be related to his "use" of a motor vehicle; and that, during the occurrence which caused the injury and death of Agrippino, he was not making use of a motor vehicle within the meaning of the terms of the policy.

We refer below only to the relevant provisions of the Liberty policy. Since Green's own motor vehicle insured under the Liberty policy was not involved, only the nonstatutory provisions apply. This coverage obliges Liberty to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the motor vehicle."

Insuring Agreement IV, "USE OF OTHER MOTOR VEHICLES Coverages B, C and D," is also relevant. That agreement states, in pertinent part: "If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private pas-

senger motor vehicle covered by this policy, such insurance as is afforded by this policy under coverages B, C and division 2 of coverage D with respect to said motor vehicle applies with respect to *any other motor vehicle,* subject to the following provisions: (a) With respect to the insurance under coverages B and C, the unqualified word 'insured' includes (1) such named insured and spouse provided his *actual operation* or (if he is not operating) *the other actual use* thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission . . . ." (emphasis supplied).

Condition 5, Definitions: "Motor Vehicle or Automobile," is also essential to the resolution of the issues raised on this appeal. The term "Motor Vehicle or Automobile" is defined as follows:

"(1) Insured Motor Vehicle — Any motor vehicle or trailer while registered to the named insured in the Commonwealth of Massachusetts, for which the named insured has filed with the Registrar of Motor Vehicles of Massachusetts a certificate of insurance, as defined in Section 34A of Chapter 90 of the General Laws of Massachusetts, issued by the company, and for which a specific premium charge is made under this policy;

"(2) Trailer — under coverages B, C and division 2 of coverage D, a trailer not within the definition of 'Insured Motor Vehicle,' if designed for use with a private passenger motor vehicle and not being used for business purposes with another type motor vehicle;

"(3) Temporary Substitute Motor Vehicle — under coverages B, C and division 2 of coverage D, a motor vehicle not owned by the named insured or his spouse if a resident of the same household, while temporarily used with the permission of the owner as a substitute for the insured motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

It is clear to us, reading all these policy provisions together, that coverage is afforded only if Green were making "use" of a "motor vehicle" "other" than "the motor vehi-

cle" owned by him and expressly covered by the policy. It is undisputed that both the Goldenfarb automobile and trailer were "other" motor vehicles within these provisions. National, however, argues that it need merely be shown that a trailer was in "use," that such use bore a causal relationship to the accident, and that it need not be shown that *Green* was *making use* of a motor vehicle. National says that, since "trailer" was defined in a section other than Agreement IV, the words of Agreement IV, which provide that the insured was engaged in "actual operation" or "other actual use" of the "other" motor vehicle, are not applicable to trailers. We do not agree. The inclusion of a definition of "trailer" in the policy clearly does not extend the coverage of the policy beyond the "insured motor vehicle," and "any other motor vehicle" as provided in Agreement IV.

To adopt National's argument would be tantamount to converting the Liberty motor vehicle policy into a general liability policy, contrary to the language of the insurance policy. Thus, since Green was not engaged in actual operation of a motor vehicle, the crucial issue is whether Green was making actual use of the Goldenfarb automobile or trailer within the meaning of the contract. We conclude that he was not.

Liberty, in arguing that there was no such "use" by Green of the Goldenfarb automobile or trailer, relies principally on the rationale stated by this court in *Travelers Ins. Co.* v. *Safeguard Ins. Co.*, 346 Mass. 622 (1964), in which we held that a motor vehicle insurance policy did not cover the actions of a grocery boy in closing the door of a vehicle on the hand of the driver. The court said that the grocery boy's conduct could not be considered a "use" of the vehicle because "it was too casual and too remote from the operation of the vehicle to qualify [the grocery boy] as an insured." *Id.* at 624. On this reasoning, Liberty urges somewhat persuasively that Green's conduct in guiding the trailer was too remote and too casual to be considered a "use" of Goldenfarb's automobile and trailer.

However, we think the determinative reasoning here is that there was no causal relationship between Green's "use," if it was such, of the trailer, and the injury and death of Agrippino. It is true that there is no requirement of causation which would amount to proximate cause in the ordinary tort sense but "[t]here must be a causal connection between the use of the automobile . . . and the accident." *LaPointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. 558, 563-564 (1972). The agreed facts made it clear that, as far as Green's conduct was concerned, there was no such causal connection. Fairly read, the stipulation of agreed facts alleged negligence of Green only in the furnishing of such inadequate equipment to Goldenfarb that it broke while in use and caused the accident to Agrippino. His action with the trailer could not be said to be connected with the causing of the accident, and thus it is clear that no indemnity is afforded by Liberty's motor vehicle policy. See *Sabatinelli* v. *Travelers Ins. Co.*, 369 Mass. 674, 677 (1976); *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 681-682 (1964).

*Judgment affirmed.*