METROPOLITAN PROPERTY & CASUALTY INSURANCE
COMPANY *vs.* WILLIAM SANTOS, JR., & another.[1]

No. 00-P-1903.

Plymouth. May 14, 2002. - September 11, 2002.

Present: CYPHER, MASON, & KAFKER, JJ.

*Practice, Civil,* Summary judgment. *Insurance,* Motor vehicle insurance, Insurer's obligation to defend, Construction of policy, No-fault insurance, Motor vehicle personal injury protection benefits, Coverage, Motor vehicle exclusion. *Words,* "Arising out of," "Use."

An insurer on a Standard Massachusetts Automobile Policy was not obligated to provide personal injury protection benefits to a person who was injured as she stood behind the insured's pick-up truck while guiding crates of fish being lifted into the truck by a hydraulic lift, where the injured person was not "occupying [the] auto" as required by the policy. [791-792]

An insurer had no duty to indemnify its insured under the optional bodily injury to others coverage of a Standard Massachusetts Automobile Policy for injuries sustained by a person who had been standing behind the insured's pickup truck while guiding crates of fish being lifted into the truck by a hydraulic lift, where the truck was being used for the delivery and transportation of goods, a purpose excluded by the policy. [792-794]

An insurer was obligated to defend and indemnify its insured under the compulsory bodily injury coverage of a Standard Massachusetts Automobile Policy for injuries sustained by a person who had been standing behind the insured's pick-up truck while guiding crates of fish being lifted into the truck by a hydraulic lift, where the compulsory bodily injury section of the policy had no "occupancy" or business use exclusion where the person's injuries were unexpected and unintended, and where the injury arose out of the "use" of the truck, which was not "too casual" or "too remote." [794-798]

CIVIL ACTION commenced in the Superior Court Department on June 5, 2000.

The case was heard by *Thomas E. Connolly,* J., on motions for summary judgment.

[1]Patricia A. Slavin.

*Michael L. Snyder* for the plaintiff.

*Allan J. Costa* for the defendants.

KAFKER, J. The case arises out of injuries sustained by defendant Patricia A. Slavin on May 17, 1999, during the loading of a pick-up truck owned by defendant William Santos, Jr., and insured by plaintiff Metropolitan Property and Casualty Insurance Company (Metropolitan). While Santos operated a hydraulic lift at the Plymouth town wharf, Slavin was hit in the mouth with three 100-pound totes of fish as she stood behind the truck in order to guide the totes into the truckbed. At the time of the incident, Santos had a Standard Massachusetts Automobile Insurance Policy (Sixth Edition) (policy) issued by Metropolitan, covering the period between July 13, 1998, and July 13, 1999.[2] The policy provided coverage for a 1983 Chevrolet K-10 pick-up truck (truck) owned by and registered to Santos.[3] Slavin filed a claim with Metropolitan for benefits under the following sections of the policy: (1) compulsory bodily injury to others (compulsory BI); (2) compulsory personal injury protection (PIP); and (3) optional bodily injury to others (optional BI).

Metropolitan filed a complaint for declaratory relief, seeking a declaration and order that it had no obligation to provide insurance benefits to or for Slavin in connection with the incident. After the parties jointly filed a stipulation of facts along with cross motions for summary judgment, a Superior Court judge allowed summary judgment in favor of Slavin and entered a declaration and order that Metropolitan had a duty to defend and indemnify Santos on any claim or civil action for personal injuries brought by Slavin in connection with the incident. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). Superior Court Rule 9A(b)(5). The judge further ruled that Metropolitan was obligated to provide PIP benefits to Slavin for the injuries she sustained in the incident. Metropolitan timely filed its notice of appeal and now claims that the judge committed an error of law in determining that the incident was covered under the policy.

---

[2] The substantive language of the policy is mandated by both G. L. c. 90, § 34A, and G. L. c. 175, § 113A(4).

[3] Under the policy, Slavin was listed as an additional named insured; Santos and Slavin resided together as well.

A. *Statement of the facts.* The parties stipulated to the follow-ing facts. Santos was a commercial fisherman who routinely docked his vessel, "Four Kids," at the Plymouth town wharf. Between 5:30 P.M. and 6:30 P.M. on May 17, 1999, Santos telephoned Slavin and requested that she bring the truck to the wharf to assist him in transferring the fish from the boat and onto the truck. Slavin arrived at the wharf with the truck between 6:00 P.M. and 7:00 P.M. Santos had already removed the fish from the "Four Kids" and placed them in hard plastic containers known as totes, weighing approximately 100 pounds each. Slavin backed the truck to the area where Santos had stacked the totes three-high and turned off the ignition.

Santos used a hydraulic lift permanently maintained at the wharf to load the totes into the truckbed.[4] He had used the lift hundreds of times prior to May 17, 1999. Slavin was standing behind the truck near the tailgate in order to guide the totes into the truckbed when she was struck in the mouth by the totes, resulting in her injuries. Slavin was not inside the truck, nor was she standing on the truckbed when she was injured; she may or may not have been making contact with the truck.

B. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Miller* v. *Mooney*, 431 Mass. 57, 60 (2000), quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). Mass.R.Civ.P. 56(c). "The interpretation of an insurance contract is a question of law for the court. . . . Likewise, the application of policy language to known facts presents a question of law for the court." *Kelleher* v. *American Mut. Ins. Co.*, 32 Mass. App. Ct. 501, 503 (1992). See *White* v. *American Cas. Ins. Co.*, 53 Mass. App. Ct. 66, 68 (2001).

C. *Personal injury protection benefits.* Part 2 of the policy provides that the insurer will pay compulsory PIP — or "no-fault" — benefits to or for the policy holder, "or any other person, if injured while *occupying [the] auto* with the [policy holder's] consent." The policy defines "occupying" in the

[4]The hydraulic lift was one of two owned by the Reliable Fish Company, which permits the fishermen to use it as needed.

"Definitions" section of the policy as "in, upon, entering into, or getting out of" the vehicle.[5] Without addressing the "occupying" requirement, the trial court awarded PIP benefits.

The defendants concede that Slavin was not occupying the automobile at the time of the incident. They nevertheless maintain that she is entitled to PIP benefits based on allegedly ambiguous language in the policy and that we must "ascertain the fair meaning of the language used, as applied to the subject matter." *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984) (citation omitted). The defendants point to the introductory statement regarding PIP benefits that provides, "[w]e will pay the benefits described below to you and other people injured or killed in auto accidents," and claim that it is inconsistent with language appearing later in Part 2 of the policy that provides, "[w]e will pay PIP benefits to or for you, or any other person, if injured while *occupying your auto* with your consent" (emphasis in original).

A fair reading of the policy reveals no ambiguity with respect to the occupancy requirement. The subsequent provision clearly contains a conditional clause requiring occupancy, and should be construed according to its plain meaning. Moreover, the defendants cite no Massachusetts case in which the language of a policy with respect to PIP benefits, if ambiguous, has been interpreted so expansively as not to require occupancy.

Given that the language of Part 2 is clear as to the occupancy requirement, the judge erred in granting summary judgment in favor of Slavin and not granting summary judgment for Metropolitan with respect to PIP benefits.

D. *Optional bodily injury to others benefits.* Part 5 of the policy provides that Metropolitan will pay optional BI benefits

---

[5]The relevant case law in Massachusetts with respect to "occupancy" has "invariably required some physical contact with the vehicle, or at a minimum, the performance of an act directly related to the vehicle, such as the changing of a tire." *Kelleher* v. *American Mut. Ins. Co.*, 32 Mass. App. Ct. at 503 (claimant struck by another vehicle when he was crossing street after having parked and locked insured vehicle he was operating was not "occupying" it within plain meaning of term and therefore could not recover); *Rosebrooks* v. *National Gen. Ins. Co.*, 13 Mass. App. Ct. 1049, 1050 (1982) (woman who slipped on ice while approaching insured vehicle and who used it to steady herself was not "occupying" it "in any real sense").

to people injured or killed in an accident if the insured or a member of his or her household is legally responsible for the accident.[6] The policy provides that the insurer will not pay for injuries caused by accidents occurring:

> "[w]hile anyone is using a vehicle in the course of any business other than that of selling, servicing, repairing or parking autos. This exclusion does not apply to private passenger autos, pick-up trucks, vans, or similar type vehicles having a gross vehicle weight of 10,000 pounds or less and not used for the delivery or transportation of goods or materials unless such use is incidental to [the policy holder's] business of installing, maintaining, or repairing furnishings or equipment."

The judge recognized this exclusion, which on its face excludes Santos's use of the truck from coverage because it involved the delivery and transportation of goods; however, he reasoned that Metropolitan raised but did not adequately develop the argument that Slavin's injuries occurred during a business use of the insured vehicle and therefore did not reach or address the exclusion.[7]

Metropolitan argues that since the parties stipulated to facts that establish that the pick-up truck was being used for the "delivery and transportation of goods or materials" — in this case fish stored in plastic totes for commercial sale — it is absolved from any duty to pay optional BI benefits under the express provisions of the policy.

Given the explicit business use exception in Part 5 of the policy, the defendants' stipulated use of the pick-up truck for loading and transporting fish in Santos's business as a fisherman, and Santos's concession in his deposition that "[a]t the time of the incident, [he was] using the truck in connection with [his] work," Slavin's motion for summary judgment with respect

---

[6]The optional BI benefits to be paid by Metropolitan "are the amounts the injured person is entitled to collect for bodily injury through a court judgment or settlement" against the insured tortfeasor, subject to the policy limits for this part. The insured may select the policy limits, but they cannot be less than the $20,000 mandated compulsory coverage.

[7]This effectively resulted in a declaration that Metropolitan had a duty to defend and, if Santos were found liable to Slavin, indemnify, on the claim for optional BI benefits.

to optional BI benefits should not have been allowed. The materials submitted by the parties in support of their cross motions for summary judgment clearly demonstrate that the defendants had no reasonable expectation of proving that the instant use was not "in the course of any business." See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

E. *Compulsory bodily injury to others benefits.* Unlike the PIP benefits section, the compulsory BI section of the policy has no "occupancy" requirement. Also unlike the optional BI benefits section, the compulsory BI section has no business use exclusion. As a result, for the purposes of determining coverage for compulsory BI benefits, we need consider only whether a covered accident has occurred.[8]

An accident is defined in the "Definitions" section of the policy as an "unexpected, unintended event that causes bodily injury or property damage arising out of the ownership, maintenance or use of an auto." The trial judge properly found that "[t]here is no dispute in the record that Slavin being hit with the fish tote on May 17, 1999 was unexpected and unintended or that such an occurrence caused her bodily injury." The judge also correctly found that because "Slavin does not own the vehicle and was not in the process of maintaining it when the accident occurred," the issue was whether the injuries arose out of the "use" of the vehicle. The judge concluded that the injury arose out of the loading of the vehicle and was therefore covered by the policy.

"The expression 'arising out of' indicates a wider range of causation than the concept of proximate causation in tort law . . . . However, the expression does not refer to all circumstances in which the injury would not have occurred 'but for' the involvement of a motor vehicle." *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 797-798 (2000), quoting from *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. 703, 704 (1996) (insurer had no duty to indemnify company whose ambulance was involved in accident while responding to

---

[8]"The damages [Metropolitan] will pay [for compulsory bodily injury to others] are the amounts the injured person is entitled to collect for bodily injury through a court judgment or settlement." The policy limits recovery to any one person involved in one accident to $20,000.

emergency medical request because death of patient before arrival of second ambulance was not an injury "arising out of" company's use of vehicle covered under policy).[9] We require a "reasonably apparent" causal connection between a vehicle's use and the injury for an accident to have occurred under the policy. *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. at 798.

"Use" for automobile insurance purposes "is not confined to motion on a highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." *White* v. *American Cas. Ins. Co.*, 53 Mass. App. Ct. at 68, quoting from 8 Couch, Insurance § 119:37 (3d ed. 1997). The use must not be "too casual and too remote from the operation of the" car, however. *Travelers Ins. Co.* v. *Safeguard Ins. Co.*, 346 Mass. 622, 624 (1964) (accident not covered because delivery boy's use of vehicle too remote and casual in case where injury resulted when he slammed insured's hand in door after loading insured's purchases into car). *Rosebrooks* v. *National Gen. Ins. Co.*, 13 Mass. App. Ct. at 1050 (accident did not arise out of use of car when plaintiff slipped and fell on ice as she put her right hand on her car two or three feet from door handle).

"In numerous cases [the Supreme Judicial Court] has said that loading and unloading a motor vehicle is a use or operation

---

[9]The distinctions drawn in this area are not always obvious. Compare *Sabatinelli* v. *Travelers Ins. Co.*, 369 Mass. 674, 676-677 (1976) (injury did not arise out of use of car where plaintiff shot by insured person sitting in car with engine running); and *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. at 704 (injury did not arise out of use of automobile when injury resulted from assault and battery following automobile accident), with *Blair* v. *Boston Elevated Ry. Co.*, 310 Mass. 1 (1941) (where plaintiff slipped on saliva on step of stopped bus, there was sufficient causal connection between injury and operation of bus to satisfy "arising out of operation of motor vehicle" requirement in statute defining exclusive District Court jurisdiction); *Roe* v. *Lawn*, 418 Mass. 66, 70 (1994) (bus driver's sexual assault on school bus passenger arose out of use of bus); *Assetta* v. *Safety Ins. Co.*, 43 Mass. App. Ct. 317, 319 (1997) (sufficient causal connection between injuries and automobile use where plaintiff hit by bottle thrown by driver of accelerating vehicle); *White* v. *American Cas. Ins. Co.*, 53 Mass. App. Ct. at 69-72 (summary judgment for insurance company reversed in case in which injury arose when driver who blew his horn to announce his arrival was immediately bitten by dog belonging to person he was picking up).

thereof. . . . However, in each of these cases the 'operated' vehicle was being used in a regular course of soliciting trade or delivering merchandise." *Travelers Ins. Co.* v. *Safeguard Ins. Co.*, 346 Mass. at 624.[10] We need not decide whether coverage for loading and unloading is confined to such cases because, in the instant case, Santos, a commercial fisherman, was loading his own pick-up truck with fish to deliver to market when the injury to Slavin occurred. Thus, the facts here appear to fall within the parameters of prior case law. See, e.g., *Cook* v. *Crowell*, 273 Mass. 356, 359 (1930).

Metropolitan argues that loading and unloading is only a covered use under a business automobile insurance policy that expressly includes loading and unloading as a use. Although some of the loading and unloading cases do involve such commercial policies,[11] we decline to hold that loading or unloading outside this context cannot be covered. Furthermore, the absence of an express reference to loading or unloading as a use in a policy's compulsory BI section is not determinative. Cf. *August A. Busch & Co.* v. *Liberty Mut. Ins. Co.*, 339 Mass. 239, 242 (1959) ("Since the physical process of placing goods in or on a motor vehicle or in removing them from the vehicle plainly would be a use of the vehicle for those purposes, it is reasonable to conclude that the [loading or unloading] clause must have been intended to cover something more"). See *American Oil Co.* v. *Hardware Mut. Cas. Co.*, 408 F.2d 1365, 1368 (1st Cir. 1969) ("when the policy is silent on the point, loading and

---

[10]See *Cook* v. *Crowell*, 273 Mass. 356, 358 (1930) (unloading clams from vehicle "in the ordinary course of its operation for soliciting trade or in calling for and delivering merchandise" was operation of vehicle under Massachusetts law); *Diggins* v. *Theroux*, 314 Mass. 735, 736-737 (1943) (statute providing District Court with exclusive jurisdiction over actions "arising out of the operation of a motor vehicle" satisfied when plaintiff was injured while assisting with loading of show case into truck transporting merchandise from shop); *Nichols & Co.* v. *Travelers Ins. Co.*, 343 Mass. 494, 497 (1962) (finding insurer liable for injuries sustained by pedestrian when she was struck by bale of cashmere wool being unloaded from insured truck). See also *Travelers Ins. Co.* v. *Aetna Life & Cas. Co.*, 410 Mass. 1002 (1991) (insurer liable for injuries to woman under automobile insurance policy where insured's employees dropped woman while in process of "loading" her and her wheelchair into van).

[11]See, e.g., *Nichols & Co.* v. *Travelers Ins. Co.*, 343 Mass. 494 (1962); *Travelers Ins. Co.* v. *Aetna Life & Cas. Co.*, 410 Mass. 1002 (1991).

unloading is 'using' an insured motor vehicle"); *Union Mut. Fire Ins. Co.* v. *Commercial Union Ins. Co.*, 521 A.2d 308, 311 n.1 (Me. 1987).

Metropolitan also suggests that the loading of Santos's catch into his pick-up truck was not "proper," given his decision not to purchase a commercial automobile insurance policy, and that therefore the injury to Slavin is not covered. The standard Massachusetts Automobile Insurance policy purchased by Santos, however, contains no express business exclusion, at least in regard to the compulsory bodily injury section. The absence of the business exclusion here is conspicuous given its presence elsewhere in the policy.[12] Moreover, the compulsory BI section expressly "provides special protection for anyone entitled to damages under this part." It is designed to fulfill the statutory purpose of providing compensation for bodily injury to others, and not just protecting the insured. *Opinion of the Justices*, 251 Mass. 569, 596 (1925). *Wheeler* v. *O'Connell*, 297 Mass. 549, 553 (1937). Therefore, even intentional misconduct, *Wheeler*, *supra*, or misstatements by the insured[13] are not grounds for denying coverage where the injury arises out of the use of the insured vehicle.

In determining whether a loading such as the one here is covered under the compulsory BI section of a personal automobile insurance policy, there are "no bright line" rules to apply, and we must instead closely examine the particular facts. *White* v. *American Cas. Ins. Co.*, 53 Mass. App. Ct. at 70. In this case, the pick-up truck was driven to the dock for the purpose of receiving and transporting Santos's catch. It was backed up to the hydraulic lift provided by a third party for the use of fishermen for loading and unloading their catch. The truckbed was the intended receptacle for the fish totes and the

---

[12]The business exclusion is present in Part 4 of the compulsory insurance section related to property damage, and, as stated earlier, in the optional BI section.

[13]As provided by G. L. c. 175, § 113A(5), "no statement made by the insured or on his behalf . . . in securing the policy . . . and no act or default of the insured, either prior or subsequent to the issue of the policy, shall operate to defeat or avoid the policy. . . ." The policy in this case stated in relation to compulsory BI that the insurer "must pay . . . claims even if false statements were made when applying for this policy." See *Espinal* v. *Liberty Mut. Ins. Co.*, 47 Mass. App. Ct. 593, 597 (1999).

totes were being positioned to be placed into the truckbed at the time of the accident. See *Diggins* v. *Theroux,* 314 Mass. at 737 ("[t]he manner of loading the show case upon the truck, which resulted in the injury . . . was conditioned upon the position, shape, and height of the truck, and the injury occurred at the very moment of placing the case upon the truck"). Slavin had left the truck and turned off the ignition and was standing behind the truck near the tailgate in order to guide the totes into the truckbed when the totes slammed into her mouth.

Given the wide range of causation encompassed by the concept of an "arising-out-of" injury, we conclude that the causal connection between the injury and the use of the automobile, being "reasonably apparent," is sufficient, and that Slavin is covered by the compulsory bodily injury to others section of the insurance policy. *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.,* 430 Mass. at 798. We also do not consider the use of the pick-up, as described above, to be "too casual" or "too remote." Contrast *Travelers Ins. Co.* v. *Safeguard Ins. Co.,* 346 Mass. at 624; *Rosebrooks* v. *National Gen. Ins. Co.,* 13 Mass. App. Ct. at 1050.

F. *Conclusion.* We reverse so much of the judgment that orders Metropolitan to pay PIP benefits to Slavin, and the judgment is to be amended to declare that Slavin is not entitled to PIP benefits. We also reverse so much of the judgment that pertains to the claim for optional bodily injury to others benefits, and order that the judgment be amended to declare that Metropolitan has no duty to indemnify Santos for Slavin's injuries under the optional bodily injury to others coverage. We affirm the judgment to the extent that it declares that Metropolitan has a duty to defend and indemnify Santos under the compulsory bodily injury coverage of the policy.

*So ordered.*