# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

—————

.

AMERICAN HOME ASSURANCE COMPANY *vs.* FIRST SPECIALTY
INSURANCE CORPORATION.[1]

No. 07-P-699.

Suffolk. March 6, 2008. - October 20, 2008.

Present: KAFKER, DREBEN, & WOLOHOJIAN, JJ.

*Insurance,* Motor vehicle insurance, Construction of policy, Coverage. *Contract,*
Insurance, Construction of contract. *Motor Vehicle,* Insurance, Loading or
unloading. *Words,* "Resulting from," "Arising out of," "Use."

In an action brought in Superior Court by a commercial automobile insurer
(plaintiff) against a general liability insurer (defendant), the judge properly
declared, on the defendant's motion for summary judgment, that the plaintiff
was obligated for defense and indemnification costs in a lawsuit arising
from injuries suffered by an employee of the insured, where the accident,
which occurred when the employee, while loading a tanker truck owned by
the insured, fell while trying to make a loading pipe work properly, "resulted
from" the "use" of a covered automobile within the meaning of the policy.
[5-6]

—————

[1]The plaintiff's complaint listed a number of other defendants who were dis-
missed by stipulation. In any event, the only defendant having an interest in this
appeal is First Specialty Insurance Corporation.

Discussion of the rule of "complete operation," which construes the term "use" in automobile insurance policies to encompass not only removing goods from the motor vehicle but also their delivery to the purchaser or consignee, rather than the more restricted doctrine that the unloading has ended when the goods have come to rest. [6-9]

CIVIL ACTION commenced in the Superior Court Department on March 3, 2005.

The case was heard by *Ralph D. Gants,* J., on motions for summary judgment.

*James J. Duane, III (Andrew R. Weiner* with him) for the plaintiff.

*Robert P. Powers* for the defendant.

DREBEN, J. The issue before us is which of two insurance companies is liable for the injuries of David A. Bone, an employee of J.P. Noonan Transportation, Inc. (Noonan), who was injured while loading oil at an oil terminal operated by Global Companies, LLC (Global). Although vehicles were loaded from the top, which was ten feet from the ground, the terminal did not have a protective guardrail for the passenger's side of a vehicle being loaded, and there was evidence that Global's equipment was defective. Noonan had agreed to indemnify Global against claims made on account of injuries such as those incurred by Bone. A judge of the Superior Court, in a declaratory judgment action brought by Noonan's commercial automobile insurer, American Home Assurance Company (American), declared, on cross motions for summary judgment, that American, rather than Noonan's general liability insurer, First Specialty Insurance Corporation (First Specialty), "was obligated to defend and indemnify Global in the underlying lawsuit." This is an appeal by American from the allowance of First Specialty's motion for summary judgment and the denial of its own. We affirm.

1. *Facts.* The relevant facts are not in dispute. Noonan, a company operating trucks transporting oil, entered into a contract with Global, the operator of an oil loading terminal, granting Noonan "the right and privilege" to use Global's facilities "for the purpose [of] receiving petroleum products into [Noonan's] trucks." The contract included an indemnification provision whereby Noonan agreed to indemnify and hold Global harmless from

all claims "arising out of or in any way connected with the exercise" by Noonan or its representatives of the privileges granted under the contract.

On September 6, 2002, Bone, one of Noonan's oil delivery drivers, while loading oil into Noonan's trailer, fell from the top of the trailer, sustaining serious injuries. Bone had little memory of what happened, but there was evidence from others that Bone had difficulty with one of the pipes and slipped and fell backward to the ground on the passenger's side of the trailer. Other drivers also had difficulties with the pipes. The top of the trailer was approximately ten feet from the ground and had a two-and-one-half-foot wide walking surface. The terminal had a guardrail for the driver's side of the trailer, but not for the passenger's side. After Bone's fall, the Occupational Safety and Health Administration investigated Global's terminal and cited Global for a "serious violation" for not adequately protecting employees from fall injuries while "toploading" oil tank trailers.

Recognizing that Bone would file an action against Global, Steadfast Insurance Company, Global's general liability insurer, sent a demand letter to Noonan demanding that it have the appropriate insurer handle the Bone lawsuit on Global's behalf. Soon thereafter, Bone (joined by his wife, seeking compensation for loss of consortium) brought an action against Global[2] alleging negligence, inter alia, in failing to provide adequate fall protection and in having a filler pipe that was not working properly. Global filed a third-party complaint against Noonan for contractual indemnity and also asserted violation of G. L. c. 93A. In a letter dated February 28, 2005, American agreed to assume the defense and indemnity of Global, subject to a full reservation of rights. Soon thereafter, American brought this declaratory judgment action seeking a declaration that First Specialty and not American was obligated to defend and indemnify Global. In April, 2006, American agreed to pay its policy limit ($1 million) toward the settlement of the underlying liability claim, subject to its reservation of rights.

---

[2]The action also was brought against Chelsea Sandwich, LLC, the owner of the premises. As the claims involving Chelsea are not pertinent to this appeal, we omit any description of pleadings and other matters that refer to any claims brought by or against Chelsea.

2. *Policy provisions.* American's policy provided:

> "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' "

American does not dispute that the vehicle involved was a covered automobile, and although the policy does not expressly refer to loading or unloading except in a tangential way in an exclusion relating to handling of property, American does not dispute that the term "use" includes loading and unloading. See *Metropolitan Property & Cas. Ins. Co. v. Santos*, 55 Mass. App. Ct. 789, 796-797 (2002).

The First Specialty policy provided:

> "We will pay those sums that the insured becomes legally obligated to pay, as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

The First Specialty policy also contained the following exclusion:

> "Aircraft, Auto or Watercraft
>
> " 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.' "[3]

Both policies had an exclusion for liability assumed by contract, except for an "insured contract."[4] Both insurers agree that the indemnification agreement constitutes an "insured contract"

---

[3] We agree with the judge that there is no meaningful distinction between the words "resulting from" in American's coverage provision and the words "arising out of" in First Specialty's exclusion provision. As observed by the judge, the two policies were intended to "fit together like two pieces of a jigsaw puzzle," one covering injuries arising from the use of an automobile, while the other excluding such coverage.

[4] Under First Specialty's policy, "Insured contract means: . . . That part of any other contract or agreement pertaining to your business . . . under which

under each of their respective policies and that the indemnification agreement obligates Noonan to pay Global's litigation expenses and its share of any settlement.

3. *Discussion.* American claims that the cause of the accident was Global's negligence in failing to have a protective guardrail and a properly working pipe. There is therefore, in its view, not the requisite causal connection between Bone's injury and the loading of the vehicle sufficient to hold American responsible; the accident was not "resulting from" the "use" of a covered automobile. See *Liberty Mut. Ins. Co.* v. *Agrippino*, 375 Mass. 108, 114 (1978); *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 798 (2000). These cases cited by American do not support its narrow view of causality.[5]

Our cases indicate that the expression "arising out of," both in coverage and exclusionary clauses,

> "must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law. Indeed, cases interpreting the phrase . . . suggest a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct."

*Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 457 (1999), and cases cited.

The statement in *Ruggerio, supra* at 797, that "the expression ['arising out of'] does not refer to all circumstances in which

---

you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." There were certain exclusions not here relevant. American's definition of an "insured contract" was similar, and any differences are immaterial.

[5]In *Ruggerio, supra* at 797-798, the court held that the delay of an ambulance because of a traffic accident was too attenuated from the decedent's death for coverage under Ruggerio's automobile policy. The decedent was not present at the accident and did not receive injuries from it. *Ibid.* In *Liberty Mut. Ins. Co., supra* at 114-115, there was no causal relationship between the death of a lifeguard and the insured's use of a boat trailer, when the insured only had supplied a pulley and shackles to pull a boat. *Ibid.*

the injury would not have occurred 'but for' the involvement of a motor vehicle," does not weaken the broad standard of *Bagley*, and that standard has been quoted by the Supreme Judicial Court with approval. See *Fuller* v. *First Financial Ins. Co.*, 448 Mass. 1, 6-7 (2006). Put another way, what is required for injuries to "arise out of" the loading of a vehicle is a reasonably apparent causal connection between the loading of the vehicle and the injury. See *Ruggerio, supra* at 798; *Metropolitan Property & Cas. Ins. Co.* v. *Santos,* 55 Mass. App. Ct. at 795.

That other causes for an injury also may exist does not preclude a determination that the injury arises out of activities excluded from coverage under the policy. Thus in *Monticello Ins. Co.* v. *Dion,* 65 Mass. App. Ct. 46, 48-49 (2005), in holding that the death arose out of operations performed for the insured, a determination that precluded coverage because of an exclusion in the policy, we considered it irrelevant that the death could be said to have been proximately caused by the insured's negligence. Accord *Commerce Ins. Co.* v. *Theodore,* 65 Mass. App. Ct. 471, 472-473 (2006).

"The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court." *Ruggerio, supra* at 797, quoting from *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). A judgment call then must be made as to where the facts of the case fall along a continuum of causation. *Ibid.,* citing *Carrigan* v. *State Farm Mut. Auto Ins.,* 140 Or. App. 359, 366 (1996), rev'd on other grounds, 326 Or. 97 (1997).

Bone, while loading his tanker truck, was in the process of trying to make a loading pipe work properly when he fell. He thus was engaged in the very activity for which the tanker truck was present at Global's terminal. These facts provide a sufficient causal connection between the loading of the tanker truck and Bone's resulting injury. See *Travelers Ins. Co.* v. *Aetna Life & Cas. Co.*, 410 Mass. 1002, 1003-1004 (1991).

Although we find in our cases sufficient causal connection, based on a reading of the term "arising out of," to affirm the judgment, we note that cases elsewhere in similar circumstances also find coverage under automobile policies, rather than general liability policies. This is so despite a defect in the loading

equipment or negligence by employees other than those of the vehicle owner.

Coverage by the automobile insurer is, however, usually found on a different basis.[6] That basis is connected to the rule of "complete operation," a rule also applicable in Massachusetts. The term "use" of vehicles been expanded to include loading and unloading in automobile insurance policies, but the rule of complete operation construes "use" broadly to encompass "not only removing goods from the motor vehicle but [also] their delivery to the purchaser or consignee rather than the more restricted doctrine that the unloading has ended when the goods have come to rest." *August A. Busch & Co. of Mass., Inc.* v. *Liberty Mut. Ins. Co.*, 339 Mass. 239, 242 (1959). Where the automobile policy contains a provision that persons using the vehicle with the consent of the insured are covered as additional insured persons,[7] the complete operation rule has been invoked to hold that the negligence of persons or entities not connected to the automobile constitutes part of the complete operation of loading. Under that doctrine, if their acts are necessary to the loading process, such persons or entities are often held to be using the vehicle and are additional unnamed insureds under the policy. See, e.g., *Kennedy* v. *Jefferson Smurfit Co.*, 147 N.J. 394, 401, 403 (1997)[8]; *Travelers Ins. Co.* v. *Employers' Liab. Assur. Corp.*, 367 F.2d 205, 207

[6]Although the parties have not urged this different basis, a discussion of those cases sheds light on why the cases from other jurisdictions American has urged us to follow are not here applicable. The cases also indicate that our conclusion that there is coverage under the automobile policy is consistent with authorities elsewhere. See, e.g., 6B Appleman, Insurance Law and Practice § 4322, at 396-397 (rev. ed. 1979) ("[I]f the unloading process was going on at the very time the accident occurred, the courts are prone to allow recovery").

[7]Such clauses often are referred to as "omnibus" clauses. See 8 Couch, Insurance § 111:1 (3d ed. 2005).

[8]In *Kennedy* v. *Jefferson Smurfit Co.*, *supra* at 401, the Supreme Court of New Jersey held that the insurer of the owner's vehicle was liable for injuries sustained by the owner while his vehicle was being unloaded due to the negligence of the shipper who had selected defective pallets for the loading process. The court determined that the selection of the pallets fell within the complete operation of the loading because the act that resulted in injury was necessary to carry out the loading. The shipper was made an additional insured under the vehicle owner's policy. The court distinguished between cases where there is negligence in the actual loading and unloading operation and cases where the negligence is not directly related to the loading and unloading process such as where there is a dangerous condition on the premises of the

(4th Cir. 1966).[9] See also *Improved Mach. Inc.* v. *Merchants Mut. Ins. Co.*, 349 Mass. 461, 463 (1965) (forklift fell over while operator was loading machinery onto insured's truck, killing employee of insured; although no employee of insured had anything to do with loading the machine, forklift operator was held to be using truck and to be additional unnamed insured under insured's automobile policy).[10]

As indicated in note 8, *supra*, the New Jersey court, as do

warehouse. In its discussion, the court, *id.* at 402-403, distinguished one of the main cases relied on by American, *Atlantic Mut. Ins. Co.* v. *Richards*, 100 N.J. Super. 180, 183 (1968), aff'd, 105 N.J. Super. 48 (1969), a case in which the premises owner, prior to the arrival of a truck, failed to remove dunnage near an open stairwell and also failed to provide the stairwell with a guardrail.

[9]In *Travelers Ins. Co.* v. *Employers' Liab. Assur. Corp.*, *supra* at 206, an employee was on top of a tanker truck loading oil at a distributor's facility when he pulled a defective wire cord necessary to carry out the loading process. The wire snapped, and the employee fell backward, sustaining severe injuries. *Ibid.* Construing Maryland law, the court held the truck owner's automobile insurer liable and that the distributor was an additional insured. *Id.* at 207.

[10]Some additional cases holding the automobile insurer responsible and treating the negligent party as a participant in the loading process and an additional insured are, e.g., *Fireman's Fund Ins. Co.* v. *Canal Ins. Co.*, 411 F.2d 265, 269-270 (5th Cir. 1969) (applying Florida law; premises employee's negligence in loading truck with ice caused injury to truck driver); *Bituminous Cas. Corp.* v. *Travelers Ins. Co.*, 122 F. Supp. 197, 200-201 (D. Minn. 1954) (applying Minnesota law; premises employee could not control power shovel during loading, injuring trucker); *Columbia S. Chem. Corp.* v. *Manufacturers & Wholesalers Indem. Exch.*, 190 Cal. App. 2d 194, 197, 204 (1961) (defective rope at premises broke, causing truck operator to fall during loading) (disapproved on other grounds in *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal. 2d 27, 38 [1961]); *Bituminous Cas. Corp.* v. *American Fid. & Cas. Co.*, 22 Ill. App. 2d 26, 31 (1959) (premises hoist failed and engine dropped on trucker while being unloaded); *Dairyland Ins. Co.* v. *Concrete Prods. Co.*, 203 N.W.2d 558, 562-564 (Iowa 1973) (negligent operation of front-end loader by premises employee caused injury to trucker); *Kings County Trust Co.* v. *Tudor Constr. Corp.*, 28 A.D.2d 853, 854 (N.Y. 1967) (while unloading debris from chute maintained on premises, chute gave way, falling on employee); *Fidelity & Cas. Co.* v. *North Carolina Farm Bureau Mut. Ins. Co.*, 16 N.C. App. 194, 195, 203 (1972) (truck passenger broke ammonia supplier's hose during loading, causing ammonia gas to escape into air, injuring premises employee); *Sinclair Oil Corp.* v. *New Hampshire Ins. Co.*, 107 R.I. 469, 471, 475-476 (1970) (valve release cord at premises snapped during loading, injuring premises employee). Cf. *Titan Constr. Co.* v. *Nolf*, 183 Colo. 188, 191, 193-194 (1973) (rope or hose of cement pump at premises knocked block or brick off building during loading, injuring trucker). But see *Travelers Ins. Co.* v. *Buckeye Union Cas. Co.*, 172 Ohio St. 507, 513-515 (1961).

many other courts, distinguishes between the cases where there is negligence in an essential part of the loading and unloading operation and those cases where the negligence is not so related and there is a dangerous condition on the premises. The cases relied on by American fall in the latter category. In contrast, in the present case, at least one of the claims of negligence — the defective pipe — was certainly essential to the loading process.

We have not analyzed the clauses of American's policy or the statutory requirements to ascertain whether Global could be considered an additional insured and do not rest our decision on that ground, but merely note that holding the automobile insurer responsible in this case is consistent with cases elsewhere.

*Judgment affirmed.*