# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 22, 2012

No. 11-50686
Summary Calendar

Lyle W. Cayce
Clerk

RAYMUNDO SALCEDO,

Plaintiff - Appellant

v.

EVANSTON INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:10-CV-363

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of summary judgment in favor of Defendant-Appellee Evanston Insurance Company ("Evanston") based upon a conclusion that Evanston owed no coverage under its commercial general liability ("CGL") insurance policy issued to Villegas & Sons, Incorporated ("Villegas"). Plaintiff-Appellant Raymundo Salcedo ("Salcedo"), the injured claimant, argues on appeal that the district court erred by construing the "auto"

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

exclusion to preclude coverage for the judgment he obtained in state court against Villegas.  For the reasons set forth below, we AFFIRM.

## I.  Facts & Procedural History

Salcedo is a judgment creditor of Villegas pursuant to a final judgment entered by the 448th District Court of El Paso County, Texas, for $1.1 million plus interest.  Evanston denied coverage in the state court proceeding based on the "auto" exclusion in its CGL policy.

The injury took place at Villegas's asphalt plant, which it had loaned to another company, Southwestern Growth ("Southwestern").  On the day of the accident, Southwestern was using the premises to upload a shipment of oil and employed Salcedo to assist with the transfer.

In the underlying case that ensued, Salcedo alleged that he was injured when a hose attached from the plant's asphalt reservoir to an oil truck ruptured while he was uploading oil from the truck to the reservoir, causing him to be burned by the hot oil.

It is undisputed that the general insuring language of the CGL policy at issue would cover this situation.  The parties' sole dispute centers on the language of Exclusion g (as amended by endorsement).  Specifically, the policy excludes bodily injury: "arising out of, caused by, or contributed to by the ownership, non-ownership, maintenance, use, or entrustment to others of any aircraft, 'auto,' or watercraft.  Use includes operations and 'loading and unloading.'"[1]  The parties stipulated that the oil truck in question is an "auto," as defined by the policy.  It is also essentially undisputed that Salcedo was "unloading" the truck at the time of the accident.

---

[1] This exclusion was articulated in the policy's "Combination General Endorsement," which modified particular sections of the original policy.  The Endorsement replaced the general auto exclusion, which excluded, *inter alia*, "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft *owned or operated by or rented or loaned to any insured.  Use includes operation and 'loading or unloading.'"* (emphasis added).  Among other changes, the italicized language about ownership/operation was deleted.

## II. Standard of Review

"We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Noble Energy Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008). As such, summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003) (citation omitted).

Under Texas law, in determining whether an insurance company has a duty to indemnify, the insured has the initial burden of establishing coverage under the terms of the policy. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). "If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion." *Id.* (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008)). To do so, the insurer must show an intent to "exclude coverage . . . in clear and unambiguous language." *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). "If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Gilbert*, 327 S.W.3d at 124 (citations omitted).[2]

---

[2] Salcedo does not argue on appeal that any exception to the auto exclusion applies and thus any argument he made to that effect at the district court is waived. *See, e.g.*, *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) (citation omitted).

## III.  Discussion

Insurance policies are generally controlled by the rules of construction and interpretation applicable to contracts so as to ascertain the parties' intent.  *See Gilbert*, 327 S.W.3d at 126; *Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995).  When interpreting ambiguous language, the "court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."  *Hudson*, 811 S.W.2d at 555 (ciations omitted).   However, a court will not rewrite the policy to align with the insured's interpretation if the policy language is clear.  *See Gilbert*, 327 S.W.3d at 126.

Despite the fact that an amendatory endorsement deleted any requirement that the insured own or operate the auto, *see supra* note 1, Salcedo argues that the insured, Villegas, must have been the one doing the unloading or, at least, causing it to be done in order for the auto exclusion to apply.  As the district court highlighted, the relevant terms of the policy are not ambiguous—they simply state that injuries arising from the use of an any auto, including loading and unloading, are excluded from coverage.  *See Vanguard Ins. Co. v. Plains Helicopter, Inc.*, 529 S.W.2d 277, 279 (Tex. Civ. App.—Amarillo, 1975, writ ref'd n.r.e.) (citation omitted) ("[W]hen parties to an insurance contract use language which has been held by the courts to have a certain meaning, they intend to give that meaning to the language.").[3]  The policy does not require that the insured

---

[3] The treatise, COUCH ON INSURANCE ("COUCH"), provides instructive guidance, and has been utilized extensively by the Texas Supreme Court in framing Texas law on this issue.  *See Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156-61 (Tex. 1999); *see also Emp'rs Mut. Cas. Co. v. Bonilla*, 613 F.3d 512, 516 (5th Cir. 2010) (noting the Texas Supreme Court's reliance on COUCH).  COUCH states that "[w]hile words should be given their ordinary meaning, they must be construed in accordance with established rules of law even though the insured may not be familiar with their legal meaning.  The judicial construction placed upon particular words or phrases made prior to the issuance of a policy employing them will be presumed to have been the construction intended by the parties; otherwise the language of the policy should have been modified to make the contrary intent clear." 2 COUCH ON INSURANCE § 22:40 (3d ed. 2009).

do anything with the auto for the exclusion to apply. The policy language thus must be accorded its plain meaning. *See Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996) ("These special rules favoring the insured . . . are applicable only when there is an ambiguity in the policy."); *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). As for the argument that Texas law itself restricts policy exclusions to acts of the insured, the Texas Supreme Court, in *Travelers Insurance Co. v. Employers Casualty Co.*, rejected a similar contention that a connection must be made between the accident and the legal control of the goods being unloaded. 380 S.W.2d 610, 613-14 (Tex. 1964); *see also Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 770 (5th Cir. 1999). Salcedo's "identity" argument is unavailing.

We thus move to the question of whether Salcedo's injury "arose out of the use" of an auto. Under Texas law, "[f]or liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle." *Lindsey*, 997 S.W.2d at 156 (citation omitted). This causal connection is "interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.* ("*ALC*"), 468 F.3d 857, 859-60 (5th Cir. 2006) (quoting *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)). In turn, "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* (citing *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992)). The Texas Supreme Court in *Lindsey* set out several factors to determine whether an injury arises out of the use of a vehicle for the purposes of auto liability insurance coverage:[4]

---

[4] Texas law illustrates that "arising out of the use of an auto" language is interpreted uniformly between the exclusion section of a CGL policy and the coverage section of an auto liability policy. *Compare Lindsey*, 997 S.W.2d at 157 (auto policy) *with Mid-Continent Cas. Co. v. Global Enercom Mgmt.*, 323 S.W.3d 151, 152-56 (Tex. 2010) (per curiam) (relying on *Lindsey* to construe the language in an exclusion section of a CGL policy).

(1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

997 S.W.2d at 157 (noting that these factors are not necessarily determinative, but should be used as a conceptual framework to analyze the exclusion at issue); *see also ALC*, 468 F.3d at 859-60 (noting that the *Lindsey* test is interpreted broadly and holding that a CGL policy's auto exclusion applied when a child was left in a daycare van during extreme heat).

Applying the *Lindsey* framework to the facts here, we find that the district court was correct in concluding that Salcedo's injury arose from the use—including loading and unloading—of the oil truck. First, his injury occurred while the oil truck was being used as it was inherently intended—uploading oil. Though it was no longer moving, its inherent purpose included activities that involved the truck at a stop, *see ALC*, 468 F.3d at 860, and there was nothing "unexpected or unnatural" about the use of the oil truck in this way, *Lindsey*, 997 S.W.2d at 158.

Second, the accident occurred within the truck's natural territorial limits, before the actual use terminated. Indeed, the use—uploading oil—was undoubtedly still in progress because the movement of hot oil and rupture of the hose was the instigating factor in causing Salcedo's injury.[5]

---

[5] Though Texas law clearly supports the "complete operation" rule, rather than the "coming to rest" doctrine, *see, e.g.*, *Commercial Standard Ins. Co. v. Am. Gen. Ins. Co.*, 455 S.W.2d 714, 716 (Tex. 1970), the distinction between these two tests for when loading and unloading is still in progress is immaterial to the facts of this case. To be sure, the "complete operation" rule provides a broader construction to the activities that are considered "using" the auto as it considers loading and unloading to encompass not only the "immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered." *See, e.g.*, *id*. (citations omitted). But here, Salcedo was injured while the hot oil was in transit from the truck to the reservoir. Even under the narrower construction posited by the "coming to rest" doctrine, the oil to be transferred undoubtedly encompassed the immediate situs of the

Third, the oil truck produced the injury in question, rather than merely contributing to it. *See Lindsey*, 997 S.W.2d at 157. As discussed, Texas requires only "but for" causation. *See, e.g.*, *ALC*, 468 F.3d at 859-60.[6] Salcedo was injured because he was uploading oil into the asphalt reservoir when the pump switch broke and the hose ruptured. The truck was not just the situs of the injury, but a producing cause.[7] The Texas Supreme Court's analysis in *Global Enercom*, 323 S.W.3d at 156, is directly on point. The court rebutted the respondent's argument that a defective rope, not the vehicle itself, caused the injuries. *Id.* Highlighting the broad standard for causation in these cases, the court reasoned that

> the workers could not have been raised on the rope through the pulley system without the use of [the vehicle]. This is not the case where the negligent actor could be standing still and accomplish the same result. The accident did not merely happen because the rope broke; the accident did not merely happen in or near the truck; the workers could not have accomplished the same result without the truck; and one of the expected purposes of this particular truck was to perform towing and lifting activities.

*Id.* (citations and punctuation omitted). Similarly, Salcedo could not have been injured in this way without the use of the oil truck; the accident did not merely

---

injury and was still in transit when the accident occurred, thus clearly invoking the "loading and unloading" clause under either standard. *See* 8A COUCH § 121:31 ("When the loading is being done by pipeline, it is immaterial to distinguish between the coming to rest and the complete operation doctrines, as the harm is sustained while the loading is actually taking place."). This does not alter our task here: to determine whether Salcedo's injury arose out of the use of an auto. Therefore, we must continue *Lindsey*'s three factor analysis.

[6] While more direct causation may be mandated by the policy as written, *see Global Enercom*, 323 S.W.3d at 156, no such differentiating language exists in this policy.

[7] Where a vehicle is the mere situs of the injury, indistinct from any other situs, it is not being "used" within the meaning of an auto exclusion. For instance, in *LeLeaux*, the Texas Supreme Court held that an accident did not stem from the use of a vehicle when a bus used for transporting students to a band competition was the mere situs of the injury. 835 S.W.2d at 52. Rather than being used for its intended purpose of transporting students, a student was injured after returning to the empty bus and the "manner in which school district employees loaded and unloaded students had nothing to do with [the student's] injury." *Id.*

happen near the truck; and the expected purpose of the oil truck was to perform the activity that led to Salcedo's injury. Simply stated, but for the use of the oil truck in its expected and intended state of uploading oil, Salcedo would not have been injured.[8] Thus, the auto exclusion applies.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Appellee Evanston.

---

[8] Our conclusion is consistent with the holdings of other courts that have considered the issue in similar circumstances, where the defective condition was not located on the vehicle itself. *See, e.g.*, *Am. Home Assurance Co. v. First Specialty Ins. Corp.*, 894 N.E.2d 1167, 1170-72 (Mass. App. Ct. 2008) (finding an auto exclusion in a CGL policy applied where the plaintiff was injured while loading oil at a terminal negligently maintained by the terminal owner); *Chenango Gas Co. v. Allstate Ins. Co.*, 240 N.Y.S.2d 194, 196-97 (N.Y. Sup. Ct. 1963) (finding an auto policy covered the insured where the plaintiff was injured as a result of a defective switch on the premises, not on the vehicle).