TRACEY S. WHITE vs. AMERICAN CASUALTY INSURANCE
COMPANY.

No. 97-P-1684.

Plymouth. December 15, 1999. - October 25, 2001.

Present: BECK, DREBEN, & RAPOZA, JJ.

*Insurance,* Coverage, Motor vehicle insurance, Motor vehicle personal injury
protection benefits, Settlement of claim. *Animal. Dog. Practice, Civil,*
Summary judgment. *Consumer Protection. Consumer Protection Act,*
Insurance. *Words,* "Use," "Arising out of."

In a civil action to recover personal injury protection benefits under an
automobile insurance policy, the plaintiff's act of pulling his vehicle into a
driveway and sounding the horn to alert his intended passenger constituted
a "use" of the automobile within the meaning of the policy. [68-69]

In a civil action to recover personal injury protection benefits under an
automobile insurance policy, an attack by a dog could be said to have
arisen out of the plaintiff's use of his automobile within the meaning of the
policy if the attack was incited by the arrival of the automobile and the
sounding of its horn [69-72]; where, on a motion for summary judgment,
the record established that a dog lunged into the window of the plaintiff's
automobile and bit the plaintiff's hand seconds after the plaintiff had pulled
into the driveway and had sounded the horn to signal his arrival, a genuine
issue for trial was set forth regarding whether the dog's attack was caused
by the honking of the horn [72-73].

An insurance company's denial of personal injury protection benefit coverage
under an automobile insurance policy to a plaintiff who had been bitten by
a dog after the plaintiff had pulled his vehicle into a driveway and had
sounded the horn did not amount to an unfair practice in violation of G. L.
c. 93A, where the denial of coverage was a reasonably debatable question
of policy interpretation. [73-74]

CIVIL ACTION commenced in the Plymouth Division of the
District Court Department on April 12, 1996.

On removal to the Superior Court Department, the case was
heard by *Patrick F. Brady,* J., on a motion for summary
judgment.

*Jack M. Atwood* for the plaintiff.

*Carol A. Griffin* for the defendant.

RAPOZA, J. On August 27, 1994, the plaintiff, Tracey White, drove to the home of an employee whose car had broken down. He pulled his automobile into the driveway, stopped the vehicle, left the motor running, and sounded the horn to signal his arrival. Within seconds, a dog bolted out of the house, ran a short distance to the car, thrust its face into the open driver's side window, and bit White on the right hand, injuring him. The dog, a rottweiler, was known to be protective, but had never before bitten anyone.[1]

White filed a claim with his automobile insurer, American Casualty Insurance Company (American), for personal injury protection (PIP) benefits.[2] The American policy covers "accidents," with an "accident" being defined as "an unexpected, unintended event that causes bodily injury or property damage arising out of the ownership, maintenance or use of an auto." American rejected White's claim on the grounds that his injuries did not arise out of an "accident."

White filed this action in District Court, alleging breach of contract and unfair claims settlement practices in violation of G. L. c. 93A and G. L. c. 176D. American answered White's complaint and also filed a counterclaim, requesting a declaration that White was not entitled to PIP benefits under its policy and that it had not violated c. 93A or c. 176D. American removed the case to Superior Court and moved for summary judgment.[3] After a hearing, the Superior Court judge granted American summary judgment on the complaint and White appealed. The judge subsequently entered a corrected judgment nunc pro tunc to the date of the original judgment, incorporating its terms and also adjudicating the counterclaim, declaring

---

[1] The defendant agreed to plaintiff's limited recital of the facts, summarized above, for purposes of summary judgment only. The summary judgment record is sparse and contains little beyond the pleadings and a handwritten statement of Shawn Hood, the plaintiff's intended passenger.

[2] The record does not disclose whether the dog owner had either homeowner's or renter's insurance, nor does it indicate whether a claim was filed thereunder. Accordingly, we do not consider the interplay of such coverage, if any, with that provided under the automobile insurance policy issued by American.

[3] White did not move for summary judgment.

that White was not entitled to PIP benefits under the American policy and that American did not violate c. 93A or c. 176D.

We review a grant of summary judgment to determine whether, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). We reverse in part and affirm in part.

1. *Entitlement to benefits.* "The interpretation of an insurance contract is a question of law for the court . . . . Likewise, the application of policy language to known facts presents a question of law for the court" (citation omitted). *Kelleher* v. *American Mut. Ins. Co. of Boston*, 32 Mass. App. Ct. 501, 503 (1992). "The words of the policy must be construed according to 'the fair meaning of the language used, as applied to the subject matter.' " *Ibid.*, quoting from *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 40 (1986).

The issue here is whether White's injuries arose out of the use of his automobile within the meaning of the insurance contract. "Our cases have not defined those circumstances in which an injury is one arising out of the use of an automobile." *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. 703, 704 (1996). In the circumstances of this case, whether White's injury arose out of the use of his automobile depends upon the answers to two questions: 1) Was White's auto in "use" within the meaning of the policy when he pulled into the driveway and sounded the horn?; and 2) If so, did White's injury "arise out of" the use of his auto?

A. *Use.* According to Couch, "[t]he term 'use' must be understood in its most comprehensive sense; and the term is not confined to motion on a highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." 8 Couch, Insurance § 119:37 (3d ed. 1997). Although there are limitations on the concept of "use" of an automobile in Massachusetts, see *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. at 706, it is typically held that vehicles engaged in activities closely related to their usual course of operation are in "use." For example, when a vehicle is being loaded and unloaded in the regular course of "solicit-

ing trade" or "delivering merchandise," it is being "used" or "operated." See *Cook* v. *Crowell*, 273 Mass. 356, 358 (1930); *Diggins* v. *Theroux*, 314 Mass. 735, 737 (1943); *Nichols & Co.* v. *Travelers Ins. Co.*, 343 Mass. 494, 497 (1962), all of which are discussed in *Travelers Ins. Co.* v. *Safeguard Ins. Co.*, 346 Mass. 622, 624 (1964). Likewise, when a bus is stopped to permit passengers to board, it continues to be operated because the stop is "incidental to this mode of travel." *Blair* v. *Boston Elevated Ry.*, 310 Mass. 1, 3 (1941). Contrast *Travelers Ins. Co.* v. *Safeguard Ins. Co.*, *supra* at 624 (store employee who accidentally closed car door on customer's fingers while loading groceries into car was engaged in activity "too casual and too remote from the operation of the vehicle" to constitute "use" for purposes of coverage).

In this case, the plaintiff was engaged in picking up a passenger when the accident occurred. When he stopped in the driveway, remained in the driver's seat with the engine running, and sounded his horn, he was using a common method of signaling the arrival of a vehicle to passengers. Indeed, a horn is installed in an automobile both to alert other drivers to potential hazards and to signal the presence of the vehicle to others, be they operators, passengers or pedestrians. Like stopping the bus to pick up and discharge passengers in *Blair*, and like loading and unloading delivery trucks in *Cook*, *Diggins*, and *Nichols*, discussed above, the plaintiff's act of pulling his vehicle into the driveway and sounding his horn to alert his intended passenger constituted a use of the automobile within the meaning of the policy.

B. *Arising out of.* "An injury arises out of the use of a vehicle within the provisions of an automobile insurance policy when a causal connection is reasonably apparent between the use to which the vehicle is being put and the resulting injury." *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 798 (2000), quoting from 8 Couch, Insurance § 119:30 (3d ed. 1997). See *Roe* v. *Lawn*, 418 Mass. 66, 69 (1994) ("there must be a causal connection between a motor vehicle's use and an injury for the injury to be deemed to have arisen out of the ownership, maintenance, or use of the motor vehicle"). Moreover, "[t]he expression 'arising out of' indicates

a wider range of causation than the concept of proximate causation in tort law." *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. at 704.[4]

There is no bright line test indicating when an injury may be said to arise out of the use of an automobile. Whether a particular injury is sufficiently related to an automobile's use must be decided on a case-by-case basis and requires "a judgment call . . . as to where along a continuum of causation fall the facts of each case." *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co., supra* at 797, quoting from *Carrigan* v. *State Farm Mut. Auto Ins.*, 140 Or. App. 359, 366 (1996), rev'd on other grounds, 326 Or. 97 (1997). See, e.g., *Sabatinelli* v. *Travelers Ins. Co.*, 369 Mass. 674, 676-677 (1976) (no relation between use of automobile and injury where plaintiff, while walking along street, was shot by person seated in automobile); *Roe* v. *Lawn, supra* (bus driver's sexual assault on passenger in school bus arose out of use of bus as transportation for victim between home and school); *Assetta* v. *Safety Ins. Co.*, 43 Mass. App. Ct. 317, 319 (1997) (injury to plaintiff, struck by bottle thrown from moving automobile, arose from use of vehicle).

In granting summary judgment to American, the Superior Court judge, citing *Rischitelli* v. *Safety Ins. Co., supra*, concluded that the plaintiff's injury was not sufficiently related to the use of the motor vehicle to make PIP coverage available. In *Rischitelli*, an accident occurred between the plaintiff's automobile and another vehicle, following which the driver of the other vehicle physically attacked the plaintiff. Acknowledging that "[i]n the last analysis, the court must make a judgment call," *id.* at 706, the court concluded that "[t]he battery on the plaintiff was sufficiently independent of the motor vehicle accident that the losses that the plaintiff sustained arose from the

---

[4]Nonetheless, we recognize that the phrase "arising out of" does not refer to "all circumstances in which the injury would not have occurred 'but for' the involvement of a motor vehicle." *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. 703, 704 (1996).

intentional wrongdoing of the other driver and not from the use of an automobile." *Id.* at 707.[5]

Here, the motion judge, while acknowledging that the term "arising out of" did not require that the use of an automobile be the proximate cause of the plaintiff's injuries, concluded that the connection between White's use of his automobile and his injuries was too remote. Like the blows struck by the pugilistic driver in *Rischitelli*, the rottweiler's bite, as viewed by the judge, constituted a cause "sufficiently independent" from the use of the plaintiff's car that his injuries did not arise from the use of an automobile. Furthermore, the defendant claims on appeal that although the horn blast and the dog bite occurred in close succession, it would be "sheer speculation" to conclude that the sound of the horn caused the dog to attack the plaintiff. Consequently, the defendant asserts, the plaintiff's automobile was merely the location where the attack occurred.[6]

We disagree. This case differs from *Rischitelli*, where the independent act was an assault and battery by one driver on another, an intentional act of criminal wrongdoing. It can reason-

---

[5]Courts have generally refused coverage for injuries sustained when, following a collision, one irate driver attacks another. "The holdings have reasoned that the violence was an independent intervening act which broke the chain of causation between the operation of the vehicles and the injuries or that the violence was merely incidental to the use of the vehicles." *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. at 705, quoting from 1 Schermer, Automobile Liability Insurance § 7.02[2], at 7-19 (3d ed. 1995).

[6]To support its position, the defendant cites to several cases from other jurisdictions concerning denials of coverage for dog attacks in or near vehicles. See *Sanchez* v. *State Farm Mut. Auto. Ins. Co.*, 878 P.2d 31, 32-33 (Colo. Ct. App. 1994) (dog leaped from suspect's car and bit police officer as suspect was arrested); *Underwriters Guar. Ins. Co.* v. *Therrien*, 640 So. 2d 234, 235-236 (Fla. Dist. Ct. App. 1994) (dog inside car bit victim's hand when he placed hand on window ledge of car); *Farmers Union Coop. Ins. Co.* v. *Allied Property & Cas. Ins. Co.*, 253 Neb. 177, 178-179, 183 (1997) (dog bit passenger while both were in vehicle); *Alvarino* v. *Allstate Ins. Co.*, 370 Pa. Super. 563, 564-565, 568 (1988) (dog bit passenger while both were in stationary van); *Heringlake* v. *State Farm Fire & Cas. Co.*, 74 Wash. App. 179, 181-182, 192 (1994) (dog bit child in bed of stationary pick-up truck). In each of these cases, no causal connection was found between the use of the vehicle and the injury, and the vehicle involved was thus merely the location of the injury. As the Supreme Judicial Court has noted, "[d]iffering approaches to policy interpretation and variations in policy language often make difficult the importation of coverage decisions made elsewhere concerning essentially the same facts." *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. at 705.

ably be inferred in such circumstances that the human aggressor formed a criminal intent to attack the other driver and acted on that intent. The collision of the automobiles may thus have motivated one driver to assault the other, but in no manner could it be said to have "caused" the assault to occur. Thus, the deliberate act of assault and battery, while occurring in the aftermath of the collision, did not "arise out of" the use of an automobile.

In this case, the rottweiler's attack on the plaintiff does not implicate the issues raised in *Rischitelli* relating to intentional criminal conduct by a human actor. Here, the issue raised is whether the attack by the rottweiler, coming as it did within seconds of a horn blast from a car that had just pulled into the driveway, was incited by the arrival of the automobile and the sounding of its horn. If so, the attack and resulting injuries can be said to have arisen out of the "use" of the automobile which set the dog in motion. If not, then we are left with the coincidence of one event temporally following another but without a causal link between them, as the defendant claims.

A defendant seeking summary judgment must make a showing "that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 714 (1991). Such an assertion must be supported with materials that "demonstrate that proof of [an essential element of the plaintiff's claim] at trial is unlikely to be forthcoming." *Ibid.* Should the defendant make that initial showing, the nonmoving plaintiff then has the burden of " 'set[ting] forth specific facts showing that there is a genuine issue for trial.' Mass.R.Civ.P. 56(e)[, 365 Mass. 825 (1974)]." *Kourouvacilis* v. *General Motors Corp.*, *supra* at 716.

The defendant here mistakes its summary judgment burden when it states in its brief that "nothing in the summary judgment record proves that the sounding of the horn *caused* the dog to attack" (emphasis original). Rather, the issue is whether the record indicates that proof of an essential element of the plaintiff's claim — here, the causal relationship between the plaintiff's use of his auto and the dog's attack — is "unlikely to be forthcoming." *Id.* at 714.

Although the defendant suggests that the connection between the two events is "sheer speculation," the summary judgment record suggests otherwise. The facts contained in the summary judgment record, though sparse, establish that White pulled his auto into the driveway, stopped his car with the motor running a short distance from the door to the house, and sounded the horn to signal his arrival. Within seconds of the horn blast, a rottweiler bolted from the doorway of the house, ran directly to the car, lunged into the car window and bit White's hand. Given the proximity of the car to the dog, the short span of time — measured in seconds — between the horn blast and the rottweiler's attack, the dog's direct path to White who had driven up and honked the horn, and the dog's history of protectiveness, it cannot be said that there is an "absence of evidence," *ibid.*, to support the trial burden of White, the nonmoving party.[7] The evidence contained in the summary judgment record does not indicate that proof of an essential element of the plaintiff's claim is "unlikely to be forthcoming," *ibid.*, nor does it establish "the absence of a triable issue." *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). Rather, the summary judgment record before us "set[s] forth specific facts showing that there is a genuine issue for trial." Mass.R.Civ.P. 56(e). In these circumstances, whether the rottweiler's attack was in fact caused by the honking of the car horn is a determination to be left to the fact finder.

2. *Unfair claims settlement practices.* "An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy cannot ordinarily be said to have committed a violation of G. L. c. 93A." *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass.

[7]We note that the determination of causation is generally a question of fact. *Johnson* v. *Summers*, 411 Mass. 82, 88 (1991), cert. denied, 502 U.S. 1093 (1992); 8 Couch, Insurance § 119:29 (3d ed. 1997). Indeed, whether or not a sudden sound or other stimulus is the cause of an animal's alarm or reaction has traditionally been treated as a factual issue. See, e.g., *Palmer* v. *Coyle*, 187 Mass. 136, 140 (1905) (whether being pressed against wagon caused horse to act in vicious manner); *Johnstone* v. *Tuttle*, 196 Mass. 112, 113-114 (1907) (whether dog's barking caused horse to start suddenly); *Mitchell* v. *Central Vt. Ry.*, 261 Mass. 29, 30-32 (1927) (whether sound of railroad whistle caused horses to run away).

462, 468 (1995), and cases cited.[8] See *Nagel* v. *Provident Mut. Life Ins. Co. of Philadelphia*, 51 Mass. App. Ct. 763, 769 (2001). Although we have decided that American wrongly interpreted its policy when it denied White coverage, we do not think that American's interpretation was unreasonable. As in *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14-15 (1989), where the insurer's denial of coverage did not amount to an unfair practice, here legal precedent in Massachusetts did not provide an obvious answer to whether coverage was mandated in the circumstances of the case; the insurer sought and relied upon advice of outside counsel; and there was no evidence of bad faith on the insurer's part. American "was entitled to decline coverage when there was a reasonably debatable question of policy interpretation." *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. at 704, citing *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, *supra* at 15. Summary judgment was properly granted regarding this issue.

3. *Conclusion.* So much of the judgment as dismisses Count I of White's complaint and declares that White is not entitled to PIP benefits under the American policy is vacated. The portion of the judgment dismissing Count II of White's complaint and declaring that American did not violate G. L. c. 93A or G. L. c. 176D is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[8]Because the plaintiff does not present a separate argument based on G. L. c. 176D, we limit our discussion to G. L. c. 93A. See *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 463 n.1 (1995).