Wright J.
This is a G.L.C. 140, §155 action to recover for serious injuries sustained by plaintiff Ronald Seletsky in the apartment of defendants Miguel and Migdalia Ruiz when he was attacked and bitten by their dog. At issue on this appeal is the plaintiff’s additional claim for the same injuries against defendant Euclides Ruiz (“Euclides”), Miguel’s father and landlord. Euclides’ Mass. R Civ. R, Rule 56, motion for summary judgment on that claim was allowed in his favor, and the plaintiff has appealed pursuant to Dist/Mun. Cts. R A D. A, Rule 8A[2]
The summary judgment materials in the record before us are essentially limited to the depositions of the plaintiff, defendant Euclides Ruiz and defendant Miguel Ruiz. A review of that evidence and all inferences arising from it in the light most favorable to the plaintiff, Lyons v. Nutt, 436 Mass. 244, 245 (2002); White v. American Cas. Ins. Co., 53 Mass. App. Ct. 66, 68 (2001), indicates that there is no dispute about any fact material to the claim against Euclides and that summary judgment was properly entered in his favor.
The plaintiff was a social worker employed by the Department of Social Services (“DSS”) to screen prospective párente for the Commonwealth’s foster care *101 program. In response to Miguel and Migdalia Ruiz’ application to become foster parents, a DSS interview was scheduled at their home at 121 Cottage Street in Chelsea on December 31, 1997. When the plaintiff arrived for the interview, he was greeted at the outside door to the two-family house by Migdalia Ruiz. She escorted the plaintiff through a second door into the hallway of the first floor apartment she shared with her husband, and disappeared into a back room. As the plaintiff stood waiting for her in the inside hallway of the apartment, a dog (a Labrador/Brittany Spaniel mix) emerged from the room Migdalia had just entered. The dog savagely attacked the plaintiff, who sustained multiple bites and scratches, including a bite more than two inches deep that nearly severed his right hand.
The house at 121 Cottage Street is, as noted, a two-family dwelling consisting of separate apartments on the first and second floors. The house has a single main entrance. Just inside that door are two separate doors, with separate locks, to the two apartments. Euclides owned the house from 1988 to 2000 and, on the date in question, occupied the upstairs apartment with his second wife and young son, David, Miguel’s half-brother. At various times during Euclides’ ownership of the property, he rented the downstairs apartment to different relatives. These included one of his daughters, later his sister and for a four-year period, his son, Miguel, and daughter-in-law, Migdalia. The couple paid him $450.00 per month in rent during their tenancy. Although the family members regularly visited each other in both apartments, they maintained separate cooking and eating facilities and separate households.
Miguel had purchased the dog a little more than a year before the incident with the plaintiff when the dog was only a few months old. He and his wife were solely responsible for all aspects of the care and feeding of the dog, which was kept in their apartment When they were at work, the dog was either locked in a cage in their apartment or tied out on their porch, which could only be accessed through their apartment With the exception of a single occasion when the dog was left for a few days in the care of Miguel’s mother (Euclides’ first wife) at her Chestnut Street home in Chelsea, the dog was never left overnight with another person or even boarded at a kennel.
Both Euclides and Miguel testified that Euclides never fed the dog or gave it water, never walked the dog or played with it and never performed any of the customary duties of a dog owner or keeper. Although Euclides’ young son David, or Euclides’ visiting nieces and nephews, interacted with the dog on occasion, the dog was never upstairs in Euclides’ apartment unless Miguel or Migdalia was at home. Miguel admitted that he was the dog’s owner. Although the dog was not licensed on the date it attacked the plaintiff, Miguel subsequently obtained a license for it and listed himself as the owner. The dog had never bitten or attacked anyone other than plaintiff, and no complaints had ever been filed against it Miguel did not inform his father of the incident with the plaintiff, and Euclides remained unaware of it until he received a letter from his homeowner’s insurance company about the plaintiffs claim.
As the Rule 56 moving party the burden was on Euclides Ruiz to establish that there was no genuine issue as to any fact material to the plaintiffs claim against him, and that he was thus entitled to summary judgment in his favor as a matter of law. Finney v. Madico, Inc., 42 Mass. App. Ct. 46, 49 (1997); Williams v. Vanaria, 2000 Mass. App. Div. 162, 163. Euclides satisfied that burden by demonstrating that proof of an essential element of the plaintiffs claim was “unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The essential element was Euclides’ role as either the “co-owner” or “co-keeper” of his son’s and daughter-in-law’s dog. Section 155 of G.L.c. 140 imposes strict liability for injury or damage caused by a dog upon only the animal’s *102 owner(s) or keeper (s).[3]
First, Miguel Ruiz admitted that he purchased the dog, housed it in his home and was, in fact, its owner. The record is devoid of any evidence remotely suggesting that Euclides was the owner or co-owner of the dog.
Second, the general rule is that “keepership” requires some degree of “harboring with an assumption of custody, management and control of the dog.” Salisbury v. Ferioli, 49 Mass. App. Ct. 485, 487 (2000), quoting from Maillet v. Mininno, 266 Mass. 86, 89 (1929). The record is again clear that Euclides never housed, fed, watered, walked, played with, disciplined, trained or in any way cared for, or controlled, his son’s dog. Euclides’ mere ownership of the house at 121 Cottage Street and his knowledge that Miguel kept the dog on the premises were not sufficient to raise a triable issue as to Euclides’ status as a co-keeper. Id. at 89; Whittemore v. Thomas, 153 Mass. 347, 349 (1891); Sullivan v. Morse, 1985 Mass. App. Div. 185, 186.
It is true, as the plaintiff contends, that keepership is ordinarily a question of fact. See, e.g., Siira v. Shields, 360 Mass. 874 (1972); Boylan v. Everett, 172 Mass. 453, 457 (1899); O’Donnell v. Pollack, 170 Mass. 441, 444 (1898). As in this case, however, judgment is properly entered in favor of the defendant as a matter of law where insufficient facts have been marshaled to establish the defendant’s liability. In Brown v. Bolduc, 29 Mass. App. Ct. 909 (1990), the defendants were the párente of the dog’s owner, held title to the property where the plaintiff was bitten and on which the defendants permitted their daughter (the dog’s owner) to live rent-free, paid all utility charges for the property, were frequently on the property to feed the horses they kept stabled there, and greeted and pet their daughter’s dog and gave it water. In affirming a directed verdict for the defendant-parents, the Appeals Court held that such evidence “advance [d] not at all any claim” that the parents were keepers of their daughter’s dog. Id. at 910. On facte even closer to the circumstances of the present case, this Division affirmed summary judgment for the defendant in Diaz v. LaPointe, 1997 Mass. App. Div. 67. The defendant in that case owned the house in which his son, the dog’s owner, rented an apartment Although the defendant-father occupied another apartment in the same building, he did not “feed, walk, train or care for the dog,” Id. at 68, and had no responsibility for it He was entitled to judgment in his favor as a matter of law on the plaintiff’s statutory claim against him as a keeper.
The plaintiff’s claim against Euclides rests on little more than the general assumption that the familial relationship between Euclides and Miguel, and the proximity of their apartments, must have led Euclides at some point to exercise some degree of control over Miguel’s dog. It was the plaintiff’s burden, however, to advance specific facte in support of his theory which were sufficient to raise a genuine triable issue. Bergendahl v. Massachusetts Elec. Co., 45 Mass. App. Ct. 715, 718-179 (1998); Khudisman v. CNA Ins. Co., 2000 Mass. App. Div. 217, 219. His failure to do so properly resulted in the allowance of Euclides’ summary judgment motion.
Appeal dismissed.
So ordered.

 A default judgment was entered against defendants Miguel and Migdalia Ruiz. That judgment has not been appealed.

 While the plaintiff has failed to include a copy of his complaint in the Rule 8A expedited appeal record he prepared and submitted to us, we conclude that his complaint against Euclides was limited to a G.L.c. 140, §155 claim. His brief is, in any evenf devoid of any argument for recovery against Euclides on a claim of negligence. Nor would the facte of this case support such a claim.