**CENTRAL MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**BOSTON TELEPHONE, INC., Defendant.**

**Civil Action No. 06–10386–WGY.**

United States District Court, D. Massachusetts.

May 10, 2007.

Justin M. Fabella, Edwin F. Landers, Jr., Morrison Mahoney LLP, Boston, MA, for Central Mutual Insurance Company (Plaintiff).

Stephen J. Delamere, Delamere & Cohen, LLC, Stoughton, MA, Carlin J. Phillips, Phillips & Garcia, LLP, North Dartmouth, MA, for Boston Telephone, Inc. (Defendant).

### MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

The parties frame the issues in this case as requiring this Court to determine how far a general liability insurance policy may be stretched before it overlaps the obligations of a more specific motor vehicle insurance policy. In particular, they ask for line drawing—how far does general liability insurance extend to indemnify for that most ubiquitous of American misfortunes, the automobile accident? An altogether different issue, however, will ultimately prove dispositive.

The plaintiff, Central Mutual Insurance Company ("Central Mutual"), seeks a declaratory judgment holding it free from liability. Central Mutual asks this Court to rule that a collision between two automobiles, on its face, must necessarily be covered by auto insurance, a more specific underwriting line, and not through general liability insurance. To advance its claim for indemnification, the defendant, Boston Telephone, Inc. ("Boston Telephone"), argues for a ruling that focuses on the cause of the accident rather than the presence of an automobile. The correct interpretation of the law lies between these two positions.

### A. Undisputed Facts

The parties do not dispute the tragic events of September 29, 2003. On that

day, two Boston Telephone employees and a Stoughton police officer, Warren Harris ("Officer Harris"), were performing cable maintenance on telephone poles in a "bucket truck" adjacent to Route 27 in Stoughton, Massachusetts. Pl.'s Statement of Facts [Doc. No. 28] ("Pl.Stat.") ¶¶ 11–12, 14.[1] One employee was in the driver's seat of the bucket truck, and the other was in a cherry picker raised to the height of the wires. *Id.* ¶ 14. Officer Harris came along as a detail police officer, as required by the Massachusetts Highway Department ("Mass Highway") when doing roadside work. *Id.* ¶ 11. Because the truck had to move to a new pole every few minutes, Officer Harris decided to forego riding behind the bucket truck in his own car. Instead, he decided to ride on the back of the truck. Def.'s Statement of Facts [Doc. No. 32] ("Def.'s Stat."), Ex. 5 at 85:5–17 (deposition of Warren N. Harris). While the truck was stationary and Boston Telephone employees worked on the wires, Officer Harris would stand on the back of the truck to observe approaching traffic. *Id.* at 86:12–87:2.

At some point late in the morning, Stephen O'Connor ("O'Connor") struck the rear of the Boston Telephone bucket truck with his own van while the bucket truck was pulled over and working on telephone wires. Pl.'s Stat. ¶ 13. Officer Harris suffered several severe injuries as a result of the collision. *Id.;* Def.'s Stat. at 8, ¶ 20.[2] Officer Harris and his wife filed suit against Boston Telephone in the Massachusetts Superior Court sitting in and for the County of Suffolk, demanding damages for present and future medical expenses,

as well as future economic loss and pain and suffering. Pl. Stat., Ex. G.

Boston Telephone turned to its insurer, Central Mutual, for the defense of and indemnification from this suit. *See* Def.'s Stat. at 9, ¶¶ 26–27. Boston Telephone had a Commercial General Liability Policy ("Policy") with Central Mutual, which purported to insure Boston Telephone for any property damage or bodily injury suffered at the work site that was not otherwise excluded from coverage. *See* Pl.'s Mot. for Summ. J. [Docket No. 29] ("Pl.Mot."), Ex. E at 5–6. Central Mutual refused to defend or indemnify, claiming that the accident was outside the scope of coverage because the accident fell within the compass of the Policy's auto exclusion clause. Def.'s Stat. at 11, ¶ 32.

In addition, in its amended complaint, Central Mutual asks this Court to allow it to rescind the Policy in its entirety. Pl.'s Am. Compl. [Doc. No. 22] at 1, 6–7. Central Mutual claims that the Policy was originally granted to cover inside telephone work, not outside "pole" work. *Id.;* Pl.'s Mem. in Supp. of Summ. J. [Doc. No. 30] ("Pl.'s Mem.") at 12–16. Central Mutual argues that the failure of Boston Telephone properly to delineate the expansion in the scope of its business constitutes a material misrepresentation that allows for rescission. Pl.'s Mem. at 12–16.

After appropriate discovery, Central Mutual moved for summary judgment. Pl.'s Mot. at 6. Boston Telephone opposed this motion, but did not file a cross-motion for summary judgment. *See* Def.'s Mem. in Opp'n to Mot. for Summ. J. [Doc. No. 31] ("Def.'s Mem."). On March 29, 2007,

---

1. In this motion for summary judgment, the plaintiff is also the moving party. For purposes of this section detailing the undisputed facts, citations to the plaintiff's statement of material facts occur only where the defendant concedes that the facts are undisputed.

2. Boston Telephone includes, in the same document, a counter-statement of material facts and a statement of disputed facts. This Court will cite to the former simply by paragraph number and to the latter by page number, followed by paragraph number.

the Court heard oral argument and took this matter under advisement to determine the breadth of the Policy.

## II. ANALYSIS

### A. Controlling Legal Principles

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue of fact exists when a reasonable jury could resolve it for either party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A fact is material when it could affect the outcome of the suit under the governing law. *Id.*

Although Boston Telephone did not move for summary judgment, if no genuine issue of material fact exists and all matters of law ought be decided in its favor, summary judgment can be granted for Boston Telephone *sua sponte. Jardines Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1560 (1st Cir.1989), *superseded on other grounds by local rule,* D.P.R.R. 313.1(B), *as recognized in Chamorro v. Puerto Rican Cars, Inc.,* 304 F.3d 1, 6 (1st Cir.2002). The Court must, however, exercise "great care ... to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as matter of law." *Andrews v. DuBois,* 888 F.Supp. 213, 220 (D.Mass.1995) (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d § 2720, at 29–34 (2d ed. 1983 & Supp. 1994)).

In a diversity case such as this, where the claim concerns a contract written and delivered in the Commonwealth of Massachusetts, Massachusetts law governs. *Erie v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Shapiro v. American Home Assurance Co.,* 584 F.Supp. 1245, 1248 (D.Mass.1984) (Keeton, J.). Interpretation of an insurance contract is matter of law. *Cody v. Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 146, 439 N.E.2d 234 (1982). In interpreting the provisions of an insurance policy, the Court must construe and enforce unambiguous terms according to their plain meaning. *Thomas v. Hartford Accident & Indem. Co.,* 398 Mass. 782, 784, 500 N.E.2d 810 (1986). Where there is more than one rational interpretation of policy language, however, "the insured is entitled to the benefit of the one that is more favorable to it." *Trustees of Tufts Univ. v. Commercial Union Ins. Co.,* 415 Mass. 844, 849, 616 N.E.2d 68 (1993) (quoting *Hazen Paper Co. v. United States Fid. and Guar. Co.,* 407 Mass. 689, 700, 555 N.E.2d 576 (1990)). "[W]hen construing language in an insurance policy, [a court] considers what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Atlantic Mut. Ins. Co. v. McFadden,* 413 Mass. 90, 92, 595 N.E.2d 762 (1992) (internal citation omitted). This rule of construction applies with particular force to exclusionary provisions. *Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 281–282, 675 N.E.2d 1161 (1997).

### B. Auto Exclusion Clause

With these principles in mind, the Court turns to the question of whether the auto exclusion clause in the Policy applies to the accident at hand. The auto exclusion clause reads as follows:

This insurance does not apply to:

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

Pl. Mot., Ex. E at 6–7. The parties agree that the bucket truck is an "auto" under the contract's definition. Consequently, the portions of the clause that are ripe for interpretation are whether the accident "arose out of" the "use" of the bucket truck.

The courts of the Commonwealth have examined extensively the terms "arising out of" the "use" of an auto. This task has generally involved determining whether an incident *is* covered by an auto insurance policy, rather than, as here, whether it *is not* covered by a general liability policy. Because the language of the clause is often identical in the two types of policies, however, the analysis ought, as a general matter, be the same.[3]

■ Massachusetts law requires that there be a "reasonably apparent" causal connection between the use of the auto and the injury for the incident to "arise out of" its use. *Ruggerio Ambulance Serv., Inc. v. National Grange Mut. Ins. Co.*, 430 Mass. 794, 798, 724 N.E.2d 295 (2000). This implies a range of causation that is wider than the traditional "proximate cause" of tort law, but narrower than a simple "but for" connection. *Id.* at 797, 724 N.E.2d 295 (quoting *Rischitelli v. Safety Ins. Co.*, 423 Mass. 703, 704, 671 N.E.2d 1243 (1996)). Whether a particular injury is sufficiently related to an automo-

bile's use must be decided on a case-by-case basis and requires "a judgment call . . . as to where along a continuum of causation fall the facts of each case." *Ruggerio Ambulance Serv., Inc.*, 430 Mass. at 797, 724 N.E.2d 295 (quoting *Carrigan v. State Farm Mut. Auto. Ins.*, 140 Or.App. 359, 366, 914 P.2d 1088 (1996), *rev'd on other grounds*, 326 Or. 97, 949 P.2d 705 (1997)).

Massachusetts cases accordingly mark out a spectrum. *See, e.g., Metropolitan Prop. & Cas. Ins. Co. v. Santos*, 55 Mass. App.Ct. 789, 795 n. 9, 774 N.E.2d 1128 (2002) (comparing cases). The cases that find a casual connection generally rely upon a determination that a specific use of the auto contributed to the injury. *E.g., White v. American Cas. Ins. Co.*, 53 Mass. App.Ct. 66, 72, 756 N.E.2d 1208 (2001) (holding that the honking of a horn was the motivating factor in a dog attacking the driver); *Assetta v. Safety Ins. Co.*, 43 Mass.App.Ct. 317, 319, 682 N.E.2d 931 (1997) (holding that the acceleration of a vehicle contributed to the injury when a bottle was thrown out of the car window). In contrast, cases that find no adequate causal connection generally determine that an independent factor caused the injury at issue. *E.g., Rischitelli*, 423 Mass. at 707, 671 N.E.2d 1243 (holding that an assault after a car collision did not arise from the use of the car, but instead from the anger of assailant); *Sabatinelli v. Travelers Ins. Co.*, 369 Mass. 674, 676–77, 341 N.E.2d 880 (1976) (ruling that a gun shot victim could not collect from auto insurer just because

---

**3.** Theoretically, the terms may be construed differently in the two context, as a coverage provision is generally entitled to liberal construction in favor of coverage, *USM Corp. v. First State Ins. Co.*, 37 Mass.App.Ct. 471, 476, 641 N.E.2d 115 (1994) *aff'd in part, rev'd in part*, 420 Mass. 865, 652 N.E.2d 613 (1995), while an exclusion is subject to a narrow construction against the insurer. *Vappi & Co. v. Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431, 204 N.E.2d 273 (1965). Drawing such a distinction would, however, present Central Mutual with a less-favored standard of interpretation. As a result, Central Mutual is not prejudiced by this Court's reliance on such cases.

the shooter fired a gun from an inside a parked car).

Massachusetts law defines "use" of an auto broadly as "not confined to motion on a highway, but extend[ing] to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." *White*, 53 Mass.App.Ct. at 68, 756 N.E.2d 1208 (quoting from 8 *Couch on Insurance* § 119:37 (3d ed.1997)). The use must, however, not be too remote from the vehicle's operation. *Travelers Ins. Co. v. Safeguard Ins. Co.*, 346 Mass. 622, 624, 195 N.E.2d 86 (1964).

Neither party in the present case identifies any use of the bucket truck that may or may not have contributed to causing the accident at hand. A review of the record as presented, however, reveals that the auto here was being used for three purposes, each of which was reasonably foreseeable to Boston Telephone: (1) for support of a cherry picker that elevated an employee to the height of cables on a telephone pole; (2) for transportation of employees to and within the work site; and (3) as a platform for Officer Harris to observe traffic. The question is whether the injuries arose out of any of these uses.

There are no facts in evidence from which a reasonable inference could be drawn, favorable to Central Mutual, that either the elevation of the Boston Telephone employee or the presence of Officer Harris on the rear of the truck contributed in any way to causing the accident. O'Connor testified in his deposition that he "looked over to the left while [he] was driving to see—to look at a street. When [he] turned his head again, [he] was sideswiping the truck." Def.'s Stat., Ex. 7 at 15:12–15. He specifically said he did not see Officer Harris. *Id.* at 15:21. There is no mention that the elevated employee in any way contributed to O'Connor's inattention or his swerving into the truck. No inference may reasonably be drawn that either of the two uses identified made it in any way more likely that the accident would occur.

Thus the only remaining use of the truck which may have contributed to the accident is that it was used to transport employees to and within the work site. An argument could be made (although no such evidence is present in the record) that without this use, the truck would not have been present or that the work site would have been set up differently, and thus the accident would not have happened. In evaluating where on the "continuum of causation" this falls, this relationship of the Boston Telephone truck to the incident is too tenuous, too lacking in specificity, to qualify as "arising out of" as these words are used in the auto exclusion clause.

In addition, as with many of the Massachusetts cases which hold that an accident does not arise out of the use of an auto, there is here an intervening, independent cause of the accident. Boston Telephone admits, and Central Mutual does not contradict, that its employees failed to place warning cones around the work site to alert oncoming traffic. Def.'s Stat. at 8, ¶ 19. O'Connor testified that had there been cones present, he would not have glanced away from the road and likely would have avoided the Boston Telephone truck. *Id.*, Ex. 7 at 45:10–16.

As there is insufficient causal connection between any use of the bucket truck and the injury, Central Mutual has a duty to defend and indemnify Boston Telephone pursuant to the Policy.

### C. Rescission Due to Material Misrepresentation

Central Mutual seeks to rescind the entire Policy due to allegedly material, untrue assertions in the Policy application.

Pl.'s Mem. at 12. Specifically, Central Mutual asserts that the Policy application states that Boston Telephone performs only telephone communications installation which is commonly understood to include only inside work and no "pole" or "line" work. *Id.* at 13–14. Because Boston Telephone was, in fact, performing pole work when the accident occurred, Central Mutual argues that the statement in their application is untrue and renders the Policy subject to rescission. *Id.* Boston Telephone accepts Central Mutual's definition of telephone communications installation, but counters that its statement was true at the time it was given and that it was under no obligation to correct its application once the Policy went into effect. *See* Def.'s Mem. at 11–14.

Massachusetts law allows an insurance company to rescind its Policy if a material misrepresentation was made on the insurance application. Mass. Gen. Law ch. 175, § 186. The statute reads:

> No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss.

*Id.*

Massachusetts has never had occasion to interpret section 186 to determine its application to a situation where a statement in an insurance application, true at the time it is made, becomes untrue after the policy goes into effect. The Supreme Judicial Court of Maine, however, has interpreted a similar statute. *See Patrons Mut. Ins. Co. v. Rideout*, 411 A.2d 673, 674–75 (1980). The Maine statute, at the time of the *Patrons* decision, read:

> Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> 1. Fraudulent; or
> 2. Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> 3. The insurer in good faith would either not have issued the insurance or contract, or would not have issued it at the same premium rate . . . .

*Id.* at 674.

In *Patrons,* the Supreme Judicial Court of Maine confronted a situation where an auto insurance policy was issued for a couple who stated on their application that they lived alone at their residence. *Id.* at 674–75. Eight months after their initial insurance policy went into force, the couple's adult daughter moved into the home and began driving the car. *Id.* at 675. When the daughter was involved in an accident, the insurance company sued to declare that it was free of legal liability due to misrepresentations on the application under the Maine misrepresentation statute. *Id.* Because the daughter did not live at the home at the time of the application, the court ruled that there had been no misrepresentation or omission. *Id.* at 678. Moreover, the Supreme Judicial Court of Maine held that "the insured who makes particular representations in the application for insurance is not obligated to inform the insurer of changes in circumstances occurring after issuance of the policy which are inconsistent with the representations in the application." *Id.* The Maine court concluded that even though the policy had been renewed twice before the accident, "the truthfulness and completeness of the representations in the application relate to the time the original application was accepted." *Id.* This is particularly true, the court reasoned, when

the insurance company makes no attempt to update the application at the time of renewal. *Id.; see also St. Paul Fire & Marine Ins. Co. v. Mayor's Jewelers of Ft. Lauderdale, Inc.,* 465 F.2d 317, 320–21 (5th Cir.1972); *Zurich Gen. Accident & Liability Ins. Co. v. Flickinger,* 33 F.2d 853, 856 (4th Cir.1929); 1 *Insurance Claims and Disputes* § 2:28 (4th ed.2007); 6 *Couch on Insurance* § 84:9 (3d ed.2006).

The facts in the present case are virtually identical to that of *Patrons,* and there is nothing in Massachusetts law to suggest a different outcome. *See Chicago Ins. Co. v. Lappin,* 58 Mass.App.Ct. 769, 773–74, 792 N.E.2d 1018 (2003). This Court considers *Patrons* persuasive in the context of individual insurance policies.

In the business context, however, the First Circuit reads Massachusetts law as placing on the insured a requirement of good faith disclosure when there is a change in business circumstance after an insurance policy has issued. *Compagnie De Reassurance D'Ile De France v. New England Reinsurance Corp.,* 57 F.3d 56, 73 (1st Cir.1995). Bad faith nondisclosure in the business insurance context occurs "where the insured has knowledge of a fact material to the risk which honesty, good faith, and fair dealing require that he should communicate to the insurer but which he designedly and intentionally withholds." *Id.* Thus, a good faith material change in business practices, made without knowledge of the effect on Central Mutual's underwriting risk, would not subject the Policy to rescission after it went into effect, but such a change made in bad faith would.

### D. Summary Judgment for Non–Moving Party

It is the possibility of bad faith nondisclosure of the material change in Boston Telephone's operations that here prevents entering summary judgment for the non-moving party. True, there is no evidence here that Boston Telephone's answers in the Policy application were false at the time it was filled out. *See* Def.'s Mem. at 12. Renewal of the Policy was automatic and did not require an updated affirmation of the facts in the original application. *Id.* Moreover, Central Mutual has provided no evidence that any Boston Telephone employee knew that the pole work was material to the underwriting risk on its comprehensive general liability insurance coverage and intentionally withheld this information.

Nevertheless, the law commands that when a court contemplates entering summary judgment for a non-moving party, it must make sure that the moving party is given an "adequate opportunity to show there is a genuine issue." *Andrews,* 888 F.Supp. at 220. While there is nothing in the present record which indicates that Central Mutual can present credible evidence of bad faith nondisclosure, a more fully developed record is necessary to warrant a conclusive finding.

### III. CONCLUSION

Accordingly, for the reasons state above, Central Mutual's Motion for Summary Judgment [Docket No. 29] is DENIED.

SO ORDERED.