*Jane Roe*, pro se, submitted a brief.

ROBERT BONINA & another[1] *vs.* JASON R. MARSHALL & others.[2] No. 07-P-566. March 26, 2008. *Insurance,* Motor vehicle insurance, Construction of policy, Coverage. *Motor Vehicle,* Insurance. *Words,* "Use," "Arising out of."

The plaintiff, Robert Bonina, a police officer for the city of Marlborough, filed a complaint in Superior Court seeking damages from Jason Marshall for personal injuries received by Bonina, as a result of Marshall's resistance to being placed into custody for driving violations. Bonina also brought a count for declaratory judgment against Commerce Group, Inc. (Commerce), asking the court to declare that the automobile insurance policy issued to Marshall by Commerce, specifically the provision concerning "Bodily Injury to Others," provided coverage for Bonina's injuries. Another count for declaratory judgment was brought against Boston Old Colony Insurance Company (BOC), asking the court to declare that the automobile insurance policy purchased by Bonina from BOC, specifically coverage for "Bodily Injury Caused By An Underinsured Auto," provides additional coverage for the injuries.

On cross motions for summary judgment the judge allowed BOC's and Commerce's motions and denied the plaintiff's cross motion. We affirm.

*Background.* We summarize the pertinent and undisputed facts. On November 1, 2002, Sergeant Robert Jusseaume of the Marlborough police department observed a pickup truck being operated with one headlight burned out. The operator of the truck was the defendant, Jason Marshall. Following the vehicle, Sergeant Jusseaume noted that the vehicle increased its speed and made a left turn in an unsafe manner. After Sergeant Jusseaume stopped Marshall's truck, Bonina arrived to assist.

Sergeant Jusseaume smelled the odor of burnt marijuana coming from the cab of the truck and observed Marshall's eyes to be red, watery, and droopy, consistent with the smoking of marijuana. Marshall also gave conflicting statements concerning the amount of alcoholic beverages he had consumed that evening. Sergeant Jusseaume asked Marshall to exit his vehicle for the purposes of engaging him in field sobriety tests, and they, with Bonina, proceeded to the rear of the truck. After the police officers formed an opinion that Marshall was operating his motor vehicle under the influence of drugs, Bonina assisted Sergeant Jusseaume in arresting Marshall, who refused to submit to arrest and placed at least one hand on a fixed object in the rear of his pickup truck in order to avoid having handcuffs placed on him. Both officers struggled to arrange Marshall's arms behind his back for handcuffing. During this struggle, Bonina felt a pain in his left shoulder. Eventually, Marshall was placed in custody.

Bonina suffered a significant injury to his left shoulder requiring two surgeries. As a result, he sued Marshall for his injuries. He also sued Com-

---

[1]Paula Bonina.

[2]Commerce Group, Inc., doing business as Commerce Insurance Company; Boston Old Colony Insurance Company.

merce, Marshall's automobile insurer, which provided coverage for injuries "arising out of the . . . use" of Marshall's automobile. In addition, Bonina sued BOC, his own automobile insurer, which provided uninsured and underinsured motorist coverage.

*Standard of review.* We review a grant of summary judgment under the familiar standard. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). We note that "[t]he interpretation of an insurance contract is a question of law." *Fuller* v. *First Financial Ins. Co.*, 448 Mass. 1, 5 (2006).

*Discussion.* We set out the relevant language of the policies in the margin.[3] The polices provide coverage only for bodily injury or property damage *"arising out of* the . . . *use* of an auto" (emphasis added).

Our decisions have made clear that "the term 'use' 'is not confined to motion on a highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured.' " *Tae* v. *Tae*, 57 Mass. App. Ct. 297, 299 (2003), quoting from *White* v. *American Cas. Ins. Co.*, 53 Mass. App. Ct. 66, 68 (2001). Stated another way, "vehicles engaged in activities closely related to their usual course of operation are in 'use.' " *Tae* v. *Tae, supra* at 299. See *Travelers Ins. Co.* v. *Safeguard Ins. Co.*, 346 Mass. 622, 624 (1964) (finding that store employee who accidentally closed car door on customer's fingers was engaged in activity "too casual and too remote from the operation of the vehicle"). Cf. *Rosebrooks* v. *National Gen. Ins. Co.*, 13 Mass. App. Ct. 1049, 1050 (1982) (concerning "use" of vehicle as "crutch or cane" to assist walking on icy pavement).

The phrase " 'arising out of' indicates a wider range of causation than the concept of proximate causation in tort law." *White* v. *American Cas. Ins. Co.*, *supra* at 69-70, quoting from *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. 703, 704

---

[3]The Commerce policy issued to Marshall contains a "Bodily Injury to Others" provision which reads, in part:

> "we will pay damages to people injured or killed by your auto in Massachusetts accidents."

The policy also contains a provision as to "Optional Bodily Injury," which reads, in part:

> "we will pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident."

Bonina's Massachusetts automobile insurance policy issued by BOC contains a provision entitled "Bodily Injury Caused by an Uninsured Auto" which reads, in part:

> "we will pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured or hit-and-run autos."

The policy also contains a provision concerning "Bodily Injury Caused by an Underinsured Auto," which reads, in part:

> "we will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance."

Both the Commerce and BOC policies define "accident" as:

> "an unexpected, unintended event that causes bodily injury or property damage arising out of the owner-ship [*sic*], maintenance or use of an auto."

(1996). However, the phrase is not so broad as to "refer to all circumstances in which the injury would not have occurred 'but for' the involvement of a motor vehicle." *Rischitelli* v. *Safety Ins. Co., supra* at 704. Because cases have not provided a bright line rule, we must ultimately make a "judgment call . . . as to where along a continuum of causation fall the facts of each case." *White* v. *American Cas. Ins. Co., supra* at 70, quoting from *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 797 (2000).

An injury does not arise out of the use of an automobile where an intervening act breaks "the chain of causation between the operation of the [vehicle] and the [injury]." *Rischitelli* v. *Safety Ins. Co., supra* at 705, quoting from 1 Schermer, Automobile Liability Insurance § 7.02[2], at 7-19 (3d ed. 1995). For example, where "one irate driver attacks another" after an automobile accident, the attack is an intervening act which breaks the chain of causation. *Rischitelli* v. *Safety Ins. Co., supra* at 705. See *White* v. *American Cas. Ins. Co., supra* at 71 n.5. Such an attack is "sufficiently independent of the motor vehicle accident that the losses . . . [arise] from the intentional wrongdoing of the other driver and not from the use of the automobile." *Rischitelli* v. *Safety Ins. Co., supra* at 707.[4]

We rule that the case before us involves an intervening act. Arguably, Bonina's injuries would not have occurred but for Marshall's use of his truck in its usual course of operation. However, Marshall's failure to submit to arrest effectively broke the chain of causation between the operation of the truck and the injury. Therefore, the plaintiff's injuries arose from the intentional wrongdoing of Marshall when he resisted arrest, rather than from Marshall's use of the truck.[5]

*Judgment affirmed.*

*John J. McMaster & Steven M. Ballin* for the plaintiffs.

*Daniel N. Lissner (John D. Boyle* with him) for Boston Old Colony Insurance Company.

*Erin E. Lynch* for Commerce Group, Inc.

---

[4]Bonina places great weight on *Roe* v. *Lawn*, 418 Mass. 66 (1994), involving a school bus driver who sexually assaulted a minor while she was a passenger in the bus. The court held that the assault arose out of the use of the school bus. *Id.* at 68-70. Of unique importance was the fact that the "school bus was used in the service of a common carrier of passengers and, therefore, carried an implied promise of safe passage. It was this promise of safe passage which led to the plaintiff's becoming a regular passenger on the bus." *Id.* at 69-70 (citations omitted). Bonina argues that *Roe* can be explained because of the special relationship between common carriers and passengers. He then analogizes to the case at hand, arguing that there is a special relationship between police officers, the drunk driver, and the general public. We are not persuaded and see no basis to apply the rationale of *Roe* in the circumstances of this case.

[5]This *is* equally true even if we were to make the questionable assumption, purely for the purposes of discussion, that Marshall's placing of his hand on a fixed object in the rear of the pickup truck in order to avoid having handcuffs placed on him was a "use" of the motor vehicle.